### ATLANTIC TRANSPORT CO. v. CONEYS.

(Circuit Court of Appeals, Second Circuit.   July 26, 1897.)

MASTER AND SERVANT—INDEPENDENT CONTRACTOR.

A firm of jobbing carpenters employed by a steamship company to make necessary repairs and alterations in their vessels when in port, and who charged for work by the hour, and lumber by the foot, sent men in charge of a foreman to do the work.  Superintendents and captains of the vessels had the right to direct the manner and extent of repairs and alterations to be made. *Held*, that the men, while so engaged, were the servants of the steamship company, and not of an independent contractor.

Wallace, J., dissenting.

In Error to the Circuit Court of the United States for the Southern District of New York.

This writ of error was brought to reverse a judgment for $2,034.85 rendered upon a verdict of the jury in favor of Michael Coneys, the plaintiff below, in an action to recover damages for personal injuries caused by the negligence of persons alleged to be the servants of the defendant, a steamship company having a line of steamers running to and from New York, and engaged in the transportation from New York to London of cattle, horses, grain, and general merchandise. The plaintiff was an employé of an elevator company, and at the time of the accident was at work upon a canal boat alongside of the defendant's steamer Mississippi, and between it and a grain elevator from which the steamer was loading.  He was injured by the fall upon him of a wooden shutter which was used for closing a gangway at the side of the top deck of the steamer, and was a part of the fittings of the vessel for the carriage of cattle, and which was being handled by carpenters in the employment of H. P. Kirkham & Son, a firm of carpenters, who were repairing the cattle stalls.  The accident happened through the negligence of the carpenters.  The defendant relied upon the position that the workmen were in the employment of independent contractors, and were not its servants, and, in various forms, requested the trial court to thus instruct the jury. The court charged the jury that the evidence showed they were not the servants

of an independent contractor, but that they were doing the ship's work at the request of, and under the direction of, the ship's officers. To this charge the defendant excepted, and the assignments of error relate to this exception, and to the various refusals of the trial judge to direct otherwise. The facts in regard to the course of business of the defendant with the firm of H. P. Kirkham & Son are given in the opinion.

William P. Burr and H. K. Coddington, for plaintiff in error.

J. Parker Kirlin, for defendant in error.

Before PECKHAM, Circuit Justice, and WALLACE and SHIP-MAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts as above). The fact of a distinction between the liability of an employer for an injury caused by the negligence of his employé or his servant, and the liability of an owner for an injury caused by the negligence of an independent contractor who undertakes to execute specified work upon the owner's property, was formerly not well recognized (Bush v. Steinman, 1 Bos. & P. 404), but is now distinctly understood (Hilliard v. Richardson, 3 Gray, 349). If any confusion now exists, it is in regard to the controlling tests that determine the character of the particular contract which is under examination. The two kinds of employment are frequently close to each other, and, while it is often not difficult to appreciate and understand the difference between the two classes of contracts, it is sometimes difficult to express the distinctions with exactness of language. The cases of Casement v. Brown, 148 U. S. 615, 13 Sup. Ct. 672, and Railroad Co. v. Hanning, 15 Wall. 649, illustrate that, while two contracts may apparently be similar in phraseology, yet their nature and subject-matter may place the respective contracting parties in different relations to each other. The tendency of modern decisions is not to regard as essential or controlling the mere incidentals of the contract, such as the mode and manner of payment (Corbin v. American Mills, 27 Conn. 274), or whether the owner can discharge the subordinate workmen, and not to regard as essential, or an absolute test, so much what the owner actually did when the work was being done, as what he had a right to do. Many circumstances may combine, as in Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017, which show that the relation of an independent contractor exists, but the significant test, which courts regard as of an absolute character, has been variously expressed by them as follows:

"The test, I think, always is, had the superior control or power over the acting or mode of acting of the subordinates? * * * Was there a control or direction of the person, in opposition to a mere right to object to the quality or the description of the work done? * * * On the other hand, if an employer has no such personal control, but has merely the right to reject work that is ill done, or to stop work that is not being rightly done, but has no power over the person or time of the workman or artisan employed, then he will not be their superior, in the sense of the maxim, and not answerable for their fault or negligence." Lord Gifford in Stephen v. Commissioners, 3 Sess. Cas. (4th Series Scot.) 535, 542.

In Linnehan v. Rollins, 137 Mass. 123, 125, the instruction of the trial judge, which was adopted by the appellate court, was:

"The absolute test is not the exercise of the power of control, but the right to exercise power of control."

In Hexamer v. Webb, 101 N. Y. 377, 4 N. E. 755, the court said:

"The test to determine whether one who renders service to another does so as a contractor or not is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as the result of his work, and not as to the means by which it is accomplished."

In Casement v. Brown, supra, the court, by Mr. Justice Brewer, said:

"The will of the companies [the owners] was represented only in the result of the work, and not in the means by which it was accomplished. This gave to the defendants the status of independent contractors, and that status was not affected by the fact that, instead of waiting until the close of the work for acceptance by the engineers of the companies, the contract provided for their daily supervision and approval of both material and work."

—Whereas, in Railroad Co. v. Hanning, supra, the court found that the essence of the contract to rebuild an old wharf, and "make it as good as new," was a reservation of the power, "not only to direct what shall be done, but how it shall be done."

In the case now under consideration the contract was not in writing, but was manifested by the course of business between the parties, and the witnesses are not at variance as to its terms. There was no question before the jury as to the evidence, but the plaintiff in error insists that it was entitled to a ruling that the legal conclusions from the evidence must be that the firm of carpenters stood in the position of independent contractors, or at least that the question of the character of the contract was one for the jury. The members of the court concur in the opinion that the facts did not entitle the plaintiff to the absolute ruling which was asked for, and the majority are of opinion that the only just inferences from the testimony are that the relation between the shipowners and the carpenter was that of master and servant. The dissenting judge thinks that the inferences might be twofold, and that the question should have been submitted to the jury.

The steamship company had for four years before the accident been operating a line of steamers carrying horses, cattle, and general cargo from New York. Whenever a steamer arrived in port, its fittings for cattle and other equipments for the carriage of freight required repairs, which were uniformly made by Kirkham & Son, who charged for work by the hour, and for material by the foot. The dock superintendent of the steamship company, in reply to the question, "Describe to us how the work is done; who gives the directions?" said:

"There are hardly any directions to be given. Mr. Kirkham has a foreman there, and he goes to work.—being used to this work, he knows just what is to be done; and he goes ahead and does this work regularly each week, excepting possibly when we have horses. When we have horses, then I counsel him how many horses."

In reply to the question, "What kind of work do they do on the ship, and how long are they there generally each trip?" he said:

"Some of them are there most all the time while the ship is in port. There is so many things to be done—fitting up the boat for grain, and tinkering around, one thing and another; fixing up the cattle fittings; fixing up for the horses—that it takes a larger or smaller gang, according to the amount of work, most of the time the ship is in port."

The carpenters' foreman testified that he goes over every vessel of the steamship company as it arrives, and reports the result of his inspection to the superintendent, who tells him to go ahead with the work; that when the Mississippi came in, the superintendent being absent, the assistant gave orders to go ahead and see to the repairing the same as usual; that in practice the witness got instructions from the captains once in a while, "in the nature of alterations, or any thing that way"; and that it was a part of his general duty to do any repairing that he sees is needed, and asked for by the captain or by the dock superintendent. Kirkham & Son are the jobbing carpenters customarily employed by this steamship line. Their experience has been such that their ascertainment of the necessary amount of repairs is relied upon. They are told to do the work, and, as a rule, need no other directions. But both the captains and the superintendent have the right to direct the extent and the manner of the alterations and repairs. It is a right not often exercised, for the carpenters apparently had the confidence of the superintendent, but the right existed. But it may be said that, while it is true that the officers of the defendant had some general power to direct how alterations and repairs should be made, they had no particular power "to direct and control the manner of performing the very work in which the carelessness occurred," and that the existence or nonexistence of such kind of power is the real question in the case, which is true. Charlock v. Freel, 125 N. Y. 357, 26 N. E. 262; Vogel v. Mayor, 92 N. Y. 18. The subject-matter to which the course of business related —that of a series of minor jobbing repairs—tells with a good deal of clearness what the rights of the respective parties were. The contract of the superintendent was not analogous to that of a householder's occasional contract with a tinman to tin a roof, or with a painter to paint a house. It was analogous to that of the owner of a house who customarily calls in the jobbing carpenter whom he is in the habit of employing, and starts him in the work of "tinkering around, one thing after another," and doing the various jobs of repairs which time has shown to be necessary. The manner in which the work shall be done, and the dangers to be avoided, as well as the extent to which the work shall be carried on, are under the control and guidance of the owner. In this case separate bills were made out for the separate kinds of work upon each vessel, and for the materials furnished for each job; and, while the mode of payment is not essential, it was not in harmony with the usual incidents of the contract of an independent contractor. Inasmuch as; in our opinion, the only inference that can fairly be drawn from the testimony is that the steamship company and the carpenters were in the usual relation of master and servant, the judgment of the circuit court is affirmed.

WALLACE, Circuit Judge (dissenting). I think that the evidence upon the trial presented a question of fact for the determination of the jury,—whether Kirkham & Son were contractors, exercising an independent calling, and delegated with the responsibility of deciding how the carpenter work which they were to do for the defendant should be done, subject to the right of the defendant to object to the

quality of the work, or whether the relation between their subordinates and the defendant was that of master and servant. Unless the defendant, pursuant to the understanding or course of business between it and Kirkham & Son, had the right to direct and control the manner of performing the very work in which the carelessness occurred by which the plaintiff was injured, the employés of Kirkham & Son were not its servants. In my opinion, the trial judge erred in taking this question from the jury, and deciding as matter of law that these employés were the servants of the defendant. I therefore dissent from the opinion of the court.