WRIGHT & COBB LIGHTERAGE CO. v. SNARE & TRIEST CO. et al.

(District Court, D. New Jersey. June 23, 1916.)

NAVIGABLE WATERS ☞20(7)—BRIDGES—INJURY FROM OPERATION OF DRAW—NEGLIGENCE OF TENDER.

The steam lighter Pioneer, passing up the Passaic river, signaled for the opening of the draw of a temporary bridge operated by a contractor while building a new permanent bridge. The draw swung open, and the Pioneer proceeded, but, when part way through, the draw began to close, and struck and injured the vessel. In fact the draw was opened to permit the passing of a down-bound vessel through the other channel, and those in charge did not observe the Pioneer. *Held*, that the injury was due solely to their negligence, and that the contractor, which was required by its contract to maintain and operate the temporary bridge and to assume all responsibility for the safety of the public and for accidents of any kind, was liable therefor. ·

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 92–95, 97; Dec. Dig. ☞20(7).]

In Admiralty. Suit by the Wright & Cobb Lighterage Company, owner of the steam lighter Pioneer, against the Snare & Triest Company, the Board of Chosen Freeholders of the County of Hudson, and the Board of Chosen Freeholders of the County of Essex. Decree for libelant against the Snare & Triest Company.

Foley & Martin, of New York City, for libelant.

Herbert R. Taylor, for Board of Chosen Freeholders of Essex County.

James J. Murphy, of Jersey City, N. J., for Board of Chosen Freeholders of Hudson County.

Hitchings & Burdick, of New York City, for Snare & Triest Co.

ORR, District Judge. The libelant, which is a corporation of the state of New York, was the owner of the steam lighter Pioneer, which came into collision with the draw span of a temporary bridge on the Passaic river on the 24th day of November, 1911.

On one side of the river is the county of Hudson and on the other side is the county of Essex, in the state of New Jersey. The board of chosen freeholders of each county jointly had maintained a bridge, commonly known as the "Plank Road Bridge" across said river, at or near the city of Newark. It being deemed advisable by the respective boards that a new bridge should be constructed in place of the old one, a contract was entered into on December 14, 1909, by a joint committee of the respective boards, with the Snare & Triest Company, whereby the latter undertook to remove the old bridge and construct a new permanent bridge in place thereof, and to build a temporary bridge for use during the construction of a permanent bridge.

It is unnecessary to refer in detail to the many terms of the contract, as two provisions alone which relate to the temporary bridge have to do with this case. They are as follows:

· "A temporary bridge for the use of team and trolley traffic will be constructed across the Passaic river and terminating as shown on the plans. It will consist of a pile trestle with steel draw span and embanked roadway, to

be used during the dismantling of the present bridge and the construction of the new bridge.

"It is to be operated and kept in first-class serviceable condition and repair by the contractor during the progress of the entire work, and to the satisfaction of the engineers in charge. The contractor must assume all responsibility for the safety of the traveling public and will be solely responsible for accidents of any kind that may occur during the continuance of this work."

The steel draw span upon the temporary bridge had been in use for a considerable time before the collision. The Pioneer, for some time prior to the collision had made about two trips per day from New York to Newark, passing by the temporary bridge. The bridge was a swinging drawbridge, controlled by electric power and operated by an engineer at the center, where it rested upon a pier in the center of the river. When the draw was closed, both channels were covered by the bridge. When the draw was open, both channels were clear of the bridge. The bridge in question was one of a number of bridges across the river.

The Pioneer, which is 140 feet long and 34-foot beam on the outside, blew the customary signal for the draw to open when, perhaps, three-quarters of a mile away. The bridge swung open. The Pioneer proceeded with due care up the river, taking the right-hand channel, but when opposite the center of the draw, the bridge began to close, and the end of the bridge to the south overtook and struck the house upon the Pioneer, and injured the same and other parts of the vessel. Those in charge of the bridge had opened the draw to permit the passage of a vessel down the river, which took the channel other than that taken by the Pioneer, and as that boat passed down the river in that channel, those operating the bridge started to close the draw without observing that there was any vessel in the other channel. Those in charge were not accustomed to give any signal to vessels passing up and down the river other than to open the draw.

It is unnecessary to consider what was done by those in charge of the Pioneer when they observed that the draw was about to close. It was then too late to avoid collision. The fact that the permanent bridge was approaching completion and lay directly down the river a few feet from the temporary bridge, thus perhaps interfering with the view of those in charge of the latter, does not excuse those in charge of the bridge from observing whether any vessels had accepted the invitation of the open draw and were in danger of being injured if the draw were closed. Those in charge of the draw were negligent, and as a result of their negligence the injuries happened.

As between the respondents, the liability must be placed upon the Snare & Triest Company. The contract had not been fully performed, and the duty of the contractor as specified in the contract had not ceased. It is true those operating the bridge were on the pay rolls of the respective boards of chosen freeholders, but they were paid out of moneys contributed wholly or in part, at least, by the contractor. Such arrangement was not intended to diminish the duty placed upon the contractor under the terms of the contract. Indeed the relation is exactly similar to the relation which existed between the same parties and which was under consideration in Clyde Steamship Com-

pany v. Snare & Triest Company et al., in an opinion handed down herewith. For the reasons therein expressed, the Snare & Triest Company must be held answerable for the damages sustained by the libelant.

The amount of the damages has not been seriously disputed. They include items paid for repairs, two days' demurrage, survey fees, and an item of merchandise carried as freight, and which was knocked overboard when the house' was struck by the drawbridge. The expenses were proper and reasonable, and the libelant should receive the amount thereof, to wit, $620.71, to which interest should be added from the 29th day of December, 1911, as damages, with costs to be taxed against the Snare & Triest Company.

The joinder of the respondents was proper because of the uncertainty as to who should be held responsible. Inasmuch as all the parties were before the court, the court will ascertain, not only the rights of the libelant, but also the relative rights and obligations of the respondent. The libel should be dismissed as to the board of chosen freeholders of the county of Essex and the board of chosen freeholders of the county of Hudson, with costs to be taxed against the Snare & Triest Company.

Let a decree be drawn.