THE LOUISE RUGGE et al.

(Circuit Court of Appeals, Third Circuit.  January 30, 1917.)

No. 2191.

1. MASTER AND SERVANT ⊙⟿301(4)—LIABILITY FOR NEGLIGENCE OF SERVANT—
SERVANT HIRED TO ANOTHER.

A contractor with two counties for the replacement of a drawbridge over a stream between them was required by his contract to maintain a temporary bridge while the work was being done at its own expense and. responsibility. Subsequently by a verbal arrangement the bridge tenders employed by the counties to operate the old bridge were retained to operate the temporary bridge, and while still paid by the counties such payments were allowed by the contractor from the contract price. *Held,* that such arrangement did not relieve the contractor from liability for their negligence in operating the bridge, but that in such operation they were its servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1213, 1214.]

2. NAVIGABLE WATERS ⊙⟿20(8)—BRIDGES—INJURY TO VESSEL FROM NEGLI-
GENT OPERATION OF DRAW.

Injury to libelant's lighter by striking its mast against the draw of a bascule bridge while passing through in the night *held,* on the evidence, due to the negligence of the bridge tenders in failing to raise the draw to its full height, until after it had been struck by the mast.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 96.]

3. EVIDENCE ⊙⟿77(5)—PRESUMPTION FROM FAILURE TO PRODUCE WITNESSES.

In a suit for injury to a vessel through the alleged negligence of bridge tenders employed by respondent, the failure of respondent to produce their testimony raises a damaging presumption.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 97.]

4. ADMIRALTY ⊙⟿122—COSTS—BETWEEN CORESPONDENTS.

Where, in a suit for injury to a vessel through negligence, for which it was alleged one or the other of a number of respondents was liable, such respondents contest the question of liability with each other on the evidence, those exonerated are entitled to costs from the one held liable.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 797–827.]

Appeal from the District Court of the United States for the District of New Jersey; Charles P. Orr, Judge.

Suit in admiralty by the Clyde Steamship Company against the tug Louise Rugge, the Board of Chosen Freeholders of the County of Essex, the Board of Chosen Freeholders of the County of Hudson, and the Snare & Triest Company. Decree for libelant against the Snare & Triest Company, from which it appeals. Affirmed.

For opinion below, see 234 Fed. 768.

Hector M. Hitchings, of New York City, for appellant.

Park & Mattison, of New York City (Henry E. Mattison, of New York City, of counsel), for The Louise Rugge.

James J. Murphy, of Jersey City, N. J., and Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and E. Curtis Rouse, both of New York City, of counsel), for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

⊙⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WOOLLEY, Circuit Judge. This suit in admiralty was brought by Clyde Steamship Company against the Steam Tug Louise Rugge, The Board of Chosen Freeholders for the County of Essex, The Board of Chosen Freeholders for the County of Hudson, and The Snare & Triest Company, to recover damages for injuries sustained by the libellant's lighter, The Boston. From a decree finding The Snare and Triest Company in fault and dismissing the libel as to all other respondents, this appeal was taken.

The facts of the case appear at length in the opinion of the District Court. 234 Fed. 768. Only the substance of the testimony, as it bears upon the discussion of the matters for review, will be given in this opinion.

The Boston, a hand winch, mast and derrick lighter, square ended, without steering gear or motive power, was being towed, stern first on short lines, by the Tug Rugge, up the Passaic River. On passing through the draw of a temporary bascule bridge, which The Snare & Triest Company had constructed for use while erecting a new bridge under contract with The Boards of Chosen Freeholders of Hudson and Essex Counties, the upper extremity of the lighter mast was struck by the overhanging draw span of the bridge, causing it to break and fall, thereby occasioning the injuries complained of.

The libellant, conceiving that it had sustained damages by the negligence of someone, filed a libel against everyone having a possible relation to the accident. These included the tug which was towing the lighter, The Boards of Chosen Freeholders of the two counties for which the new bridge was being erected, and The Snare & Triest Company, contractor, engaged in the new work in connection with which the temporary bridge was built and operated. The libellant charged negligence in a wandering way, first against the tug for carelessly handling her tow in passing through the draw; and then against The Boards of Chosen Freeholders of the two counties and The Snare & Triest Company (according as the testimony might fasten negligence upon one or the other) in the operation of the span. Each respondent, defending separately, attempted to exonerate itself with indifference as to the effect of its defense upon its co-respondents. The tug denied negligence in its manœuvres; the Boards of Freeholders, while not denying negligence in the operation of the bridge, denied their liability for it, upon the ground that the temporary bridge was operated at the time of the accident by the Snare & Triest Company under a contract with them to operate the same for the free passage of vessels, and to be responsible for all accidents resulting therein; and the Snare & Triest Company, while producing no testimony to disprove negligence, denied liability for the negligence proved, because, as it contended, it had been relieved of its original liability under the contract with the Boards of Freeholders for the safe operation of the bridge by a change in its terms, whereby, at the time of the accident, the bridge was operated by servants of the Boards of Freeholders of the two counties for whose negligence the counties were liable. In this state of the pleadings the trial opened, the libellant endeavoring to place the responsibility with indifference upon some re-

spondent, and each respondent striving to escape liability with indifference as to the fate of the others. The outcome was a decree against the Snare & Triest Company.

The complaint of the Snare & Triest Company (hereinafter called the appellant) is two-fold; first, that the court erred in finding from all the evidence that it was in fault; and second, that in reaching that finding, the court erred in using against it evidence produced by other respondents in their own defense, when between them and the appellant no pleadings had been filed and no issues joined.

In this case there was an issue between the libellant and the several respondents, each being charged with the negligence which inflicted the injury. It was therefore necessary for the trial court to consider either separately or collectively the whole testimony in order to determine where the negligence lay, the liability therefor, and the measure and perhaps the division of damages. It is easy to find from the court's opinion the testimony upon which it dismissed the libel as to three of the respondents, but it is not entirely clear upon whose testimony the court found against the appellant. It may be that the finding was based in part upon the testimony of witnesses other than those produced by the libellant. We are therefore inclined, without approving the appellant's theory, to review the case, first, upon all the testimony, and second, upon the testimony of the libellant's one witness as to negligence, and of the appellant's one witness in reply.

We concur in the decree of the trial court based upon the whole testimony. Briefly stated, it shows that the tug, having in tow the libellant's lighter, blew for the bridge when about 2,000 feet away; that she lowered her speed to one bell, and then stopped her engines entirely and drifted towards the bridge waiting for it to rise; that, though the night was dark, the bridge lights were plainly discernible, and that she started only after the light on the end of the bridge showed that the bridge had been raised and had stopped, and then with due care proceeded on a course that would have enabled her tow to clear the bridge had the bridge been fully raised; that in passing through the draw, the mast of the lighter struck the overhanging span, whereupon the span was instantly raised to its proper and full height. It further appears that the bridge was a temporary structure, of a lift or bascule type, used in connection with permanent work being conducted by the appellant under contract with the counties of Essex and Hudson; that under this contract the appellant undertook to operate the bridge, and assumed sole responsibility for accidents of any kind that might occur during the progress of the work; that after the contract had been entered upon, an arrangement was made between the appellant and the Boards of Freeholders of the two counties, whereby the bridge-tenders previously employed upon the old bridge should be retained, and to secure payment for their services the appellant surrendered to each county a certain portion of its contract money.

By this testimony we think the District Court was justified in its findings of fact, that by no possibility was the libellant's lighter in fault; that the tug was not in fault; and that the negligence which caused the injury was the negligence of the men who operated the draw.

This negligence was not denied by testimony produced either by the appellant or by the two Boards of Freeholders, which were the only parties that had a relation to the operation of the draw, but liability therefor was denied by all, according as each viewed the arrangement with respect to bridge-tenders. We are of opinion that the evidence was sufficient for the court to find the further fact that while the bridge-tenders were the servants of the counties they were hired or loaned to the appellant, were paid for their services by the appellant (though indirectly) and were engaged in its work at the time of the accident.

[1] In applying the law to these findings of fact, in order to determine the appellant's liability for the negligence of the servants of another, the trial court very properly invoked the principle, that:

"If the servants of a man are sent to work upon the property or the premises of another, they will become the servants of the latter if they work under his direction and control; otherwise not, and where the servants of one person are hired or loaned to another they become the servants of the latter for the time being." Cooley on Torts, 624.

The court followed the tendency of modern decisions in disregarding as essential or controlling the mere incidentals of the situation, such as the mode and manner of payment of wages and which of two parties had the power of discharge, Atlantic Transport Co. v. Coneys, 82 Fed. 177, 28 C. C. A. 388, and was right in applying the test pointed out by the Supreme Court in Standard Oil Co. v. Anderson, 212 U. S. 215, 221, 222, 29 Sup. Ct. 252, 53 L. Ed. 480, by inquiring whose was the work being performed and by ascertaining who had the power to control and direct the servants in the performance of that work.

[2] Viewing the decree as based upon the testimony produced by all the parties, respondents as well as libellant, we find no error in the inferences drawn or in the law applied. We will now inquire whether the decree against the appellant can be sustained upon the testimony of the libellant's witness alone, without conceding, as contended by the appellant, that after using the witnesses of its co-respondents by cross-examination and argument to shift liability from itself to them, it may still avoid the force of their testimony against itself.

The appellant seeks to escape the burden of the testimony of its co-respondents upon the theory that as they did not file cross-bills against it and as it did not file cross-bills against them, their testimony, by analogy to the confession of a co-defendant and to the rule that the answer of one defendant is not evidence against another (Conklin's Admiralty [2d Ed.] vol. 2, page 270), is not binding upon it. Of course the answer of one defendant is not evidence against a co-defendant any more than is the confession of one binding upon the other, and nothing of the kind was attempted at the trial. The situation of the respondents did not call for or permit interpleading between them by cross-bill. A cross-bill is in the nature of a cross-suit, to be heard in the original suit, and is filed to the original bill when a counter-claim is urged or affirmative relief is prayed with respect to a matter arising out of the same cause of action. No respondent made counter-claims by answer against other respondents affecting

their rights and entitling them under any rule to notice thereof by service of the answer; nor did any respondent, by pleading or evidence, seek affirmative relief or make claims against another in the nature of counter-claims for contribution, indemnity or otherwise. The relation of each respondent to the libellant was that of tortfeasor, but their relation to one another was merely that of finding themselves joined in one action and severally charged with the same wrongdoing, in which each claimed it was not guilty, and from which each endeavored to escape by exonerating itself at the expense of the others. As between defendants thus jointly sued, though severally charged, where each claims it is not guilty for the reason that the other is guilty, interpleading is no more necessary than between defendants jointly indicted.

[3] What is the effect of the libellant's testimony directed solely against the appellant and of the appellant's testimony in reply? The libellant's one witness as to negligence testified in substance that he was the captain of the lighter; that he saw the bridge and its lights; that the tug blew for the bridge and waited "until the bridge got up * * * and then started to go ahead again" at half speed, indicating the angle at which the bridge opened and how the mast of the lighter struck. While the appellant makes the argument from this testimony that the tug went under the bridge when it was still ascending, we think the testimony conclusively shows that the bridge had risen and had stopped before the tug proceeded, and that this amounted to an invitation to the tug to come on, and prima facie shows negligence of those operating the bridge. This is the substance of the testimony of the one witness produced by the libellant. To controvert this testimony, meagre as it was, the appellant produced no witnesses, not even the men who raised the span and who were engaged upon the work at the time of the accident. Such an omission in admiralty raises a damaging presumption. The one witness it produced was its secretary and treasurer, who restricted his testimony to the denial of the libellant's liability for the negligence shown, under his version of the transaction between the libellant and the Boards of Freeholders of the two counties as to whose servants operated the bridge, how they were paid, and by whom they were controlled.

The appellant's contention that it is not bound by the testimony of its co-respondents introduced in exoneration of themselves, does not, even if sound, aid it in the state of the testimony just recited. The libellant proved a prima facie case of negligence against the party responsible for the operation of the bridge without showing who that party was. The appellant supplied this omission in proofs by showing that at one time it was the party responsible for the operation of the bridge under its contract with the Boards of Freeholders, but for defense maintained (without controverting the proven negligence) that it was not responsible at the time of the accident because it had been relieved of the operation of the bridge by an alteration in the contract. Therefore, the appellant's defense was in the nature of confession and avoidance, confessing the fact of negligence by not controverting it, and avoiding it by endeavoring to show that it had been relieved of

its one time liability for the operation of the bridge, and therefore the negligence proved was the negligence of another. Negligence thus being prima facie shown and not controverted and original responsibility for the operation of the bridge being admitted, the one question remaining for the court was whether the appellant had shown that at the time of the accident it had been relieved of its original responsibility by a valid change in the contract. We are of opinion that by the appellant's own showing, the arrangement as to bridge-tenders was not an official act of the two Boards appearing in their minutes, and that it was not otherwise "the subject of a written agreement," and therefore the court was justified in finding that the contract between the appellant and the counties had not been changed, that the work of operating the bridge remained that of the appellant, and that even if the bridge-tenders were nominally the servants of the counties, they were nevertheless actually engaged upon the appellant's work and for their negligence the appellant was liable. We have examined the decree, based upon the testimony restricted as claimed by the appellant, and find that the decree against the appellant can be sustained without the aid of the testimony produced for the other respondents by which, in exonerating themselves, they cast upon the appellant the accumulated evidence of its negligence and liability.

[4] Error is assigned in the decree of the court awarding costs to each of the respondents against the appellant, upon the theory that there were no matters litigated between them, and that the appellant had nothing to do with making them parties. The appellant took issue at the trial with certain of its co-respondents (not with the libellant) upon the question of negligence, and with certain other co-respondents upon the question of liability, and endeavored to do to its co-respondents the very thing of which it complains of them, namely, use the testimony of one against the other to exonerate itself in one way or another. The issues were really fought out between the respondents, negligence of one of them being manifest. The appellant accepted the issue of negligence tendered by the tug, and tried out that issue with the tug, and itself tendered the issue of liability to the two Boards of Freeholders and tried out that issue with them. Having thus tried the issues with its co-respondents and lost, we apprehend that it cannot now complain of an award of costs against it in their favor.

The decree below is affirmed.