WRIGHT & COBB LIGHTERAGE CO. v. SNARE & TRIEST CO. et al.

(Circuit Court of Appeals, Third Circuit. January 31, 1917.)

No. 2192.

1. NAVIGABLE WATERS ⬥20(8)—BRIDGES—INJURY TO VESSEL FROM NEGLIGENT OPERATION OF DRAW.

A steam lighter passing up the Passaic river was injured by the premature closing of a drawbridge, which had opened after her signal. In fact the draw had been opened on the signal of a down-bound tug in the other channel, and the tenders did not see the lighter, nor hear her signal. *Held*, that the injury was due solely to their negligence.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 96.]

2. NAVIGABLE WATERS ⬥20(8)—DUTY OF PUBLIC CORPORATION TO KEEP FREE—DELEGATION TO CONTRACTOR.

Counties, under a public duty to keep open a navigable stream between them, may employ an independent contractor for the operation of a drawbridge, who assumes liability for its proper operation; and, conceding that they would not thereby relieve themselves from liability for injury to a vessel through negligent operation of the bridge, that question cannot be raised by the contractor, when sued for the injury for which it contracted to be liable.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 96.]

Appeal from the District Court of the United States for the District of New Jersey; Charles P. Orr, Judge.

Suit in admiralty by the Wright & Cobb Lighterage Company against the Snare & Triest Company, and the Boards of Chosen Freeholders of the Counties of Hudson and Essex. Decree for libelant against the Snare & Triest Company, which appeals. Affirmed.

For opinion below, see 234 Fed. 774.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hector M. Hitchings, of New York City (J. Elmer Melick, of New York City, of counsel), for appellant.

Foley & Martin, James A. Martin, and Geo. V. A. McCloskey, all of New York City, for appellee Wright & Cobb Lighterage Co.

James J. Murphy, of Jersey City, N. J., and Herbert W. Taylor, of New York City, for appellees Boards of Chosen Freeholders of Hudson and Essex Counties.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge.   The libellant was the owner of the steam lighter Pioneer, which came into collision with the draw span of a temporary bridge on the Passaic River, built by The Snare & Triest Company for use during its construction of a new bridge under contract with The Board of Chosen Freeholders of the County of Essex and The Board of Chosen Freeholders of the County of Hudson.   The Snare & Triest Company was found in fault (234 Fed. 774), and from the decree entered it took this appeal.

[1] The facts of the case are of narrow compass.   It appears that the bridge was of the draw or turntable type, made in one structure, spanning two channels of the river when in place, and resting upon a central pier, upon which it was electrically revolved in opening and closing.   On the occasion of the accident the bridge-tenders heard a signal, and, thinking it the signal of a tug then approaching in view, opened the bridge and let her through one channel.   Before the bridge was opened, the Pioneer had signalled the bridge, and when it opened, whether in response to her signal or to the signal of the tug, she proceeded through the other channel.   Her approach to the bridge was for a time obscured by new construction work, and not being observed, the bridge-tenders began closing the bridge while she was still in the draw.   Realizing her danger, she gave a danger signal and reversed her engines, a doubtful manœuvre.   The bridge-tenders, then seeing her for the first time, tried to reverse the bridge but were too late, and the collision followed.   In this state of the testimony there is doubt whether the signal, in response to which the bridge was opened, was the signal of the tug or the signal of the Pioneer.   There is no doubt, however, that the Pioneer signalled the bridge, when at a proper distance and under proper control, there being affirmative testimony for the Pioneer that she blew, which was opposed only by negative testimony of the bridge-tenders that they did not hear her blow. We think that in approaching the bridge and entering the draw, the Pioneer gave the only signal which under maritime rules or in prudence was required of her; that she was not in fault in assuming that the bridge was opened in response to her signal, and that, as reply signals from the bridge were not customarily given, the opened bridge was an invitation to her to come through, in accepting which there rested upon those operating the bridge, whether opened for the passage of one craft or two, the duty to permit her to pass through in safety.   We further find that being without fault in entering the draw, the Pioneer was not liable for unwise manœuvres in the extremity in

which she was placed by those who closed the bridge upon her, and that the accident was occasioned by the negligence of those operating the bridge.

It was not disputed that the bridge was operated by the servants of one or another of the respondents. The question was, which of the respondents was operating the bridge. The Boards of Freeholders of the two counties, while not denying the negligence charged, denied liability therefor, as in the case of The Louise Rugge (D. C.) 234 Fed. 768, recently reviewed by this court, upon the ground that the bridge was operated not by them but by the appellant under a contract with them, whereby it undertook to operate the same "and be solely responsible for accidents of any kind that may occur during the continuance of * * * work" on the new bridge. The appellant denied negligence, as well as liability, imputing negligence to the lighter, and maintaining that under an arrangement with the Boards of Freeholders of the two counties the bridge was not operated by it but by employés of the counties, for whose negligence the counties, and not the appellant, were liable. Upon this question the trial court found, as in the case of The Louise Rugge, that under the arrangement between the appellant and the two counties, the bridge-tenders, though servants of the counties, were engaged in the work and were within the control of the appellant. Cooley on Torts, 624; Atlantic Transport Co. v. Coneys, 82 Fed. 177, 28 C. C. A. 388; Standard Oil Co. v. Anderson, 212 U. S. 215, 221, 222, 29 Sup. Ct. 252, 53 L. Ed. 480. This finding was based upon even clearer evidence than in the other case, because here the appellant itself defined the employment of the bridge-tenders by saying:

"As we understand it, the agreement is as follows: The twelve men (bridge-tenders) now employed for operating the temporary bridge are under our control and are to be subjected to the orders of our superintendent and to work in a manner satisfactory to us.

"We are to pay a proportion of their wages. * * * This arrangement to continue until such time as we would be entitled under our present contract to discontinue the operation of the temporary bridge with our own employés. * * * This agreement to be entirely outside of our contract and is not in any way to affect the terms of our contract as regards the operation of the bridge or payments due under our contract."

This shows so certainly that the bridge was operated by the appellant with servants, though nominally of the counties yet actually under its command and control, that the appellant does not urge with the same vigor the defense made in the Tug Louise Rugge, but defends upon other grounds.

[2] The first is, that there was a duty upon the Boards of Freeholders to keep their navigable waters clear, of which, because a governmental duty, they could not divest themselves by delegating it to the appellant; hence the contract by which the appellant undertook to operate the bridge was ultra vires of the counties and for that reason relieved the appellant of liability for its negligence in the performance of its undertaking.

Assuming for the moment that the obligation of the counties to keep clear navigable streams within their borders is a public trust which they cannot abdicate, we are at a loss to see how that obligation re-

lieves the appellant of its obligation to be the instrument through which the counties undertook to perform that function. Manifestly the counties, being bodies politic and not persons, can perform their function of keeping open navigable streams only by employing agencies or instrumentalities of some kind or other. These may be servants directly employed and paid by the counties under such contracts of service as the parties may expressly or impliedly make; or the instrument may be an independent contractor, as in this instance, who undertakes to work for the counties under such a contract with respect to duties, obligations and indemnities, both to the public and to themselves, as the parties may agree upon. When the independent contractor undertakes to do such work and to assume liability for negligence in its performance, its undertaking raises a duty to the public, and is an obligation to the counties in the nature of a contract of indemnity, and is binding upon it both to the public and to the counties without regard to whether the counties have or have not abdicated their public function. Whether the counties can abdicate such a function and can avoid liability by delegating it to another, are questions that can be raised only by one to whom the counties owe a duty and who has suffered by a violation of that duty. They cannot be raised by the independent contractor, who has based his undertaking upon a consideration received and retained, and to whom the counties owe no duty and with respect to whom the counties have violated no obligation, contractual or governmental.

As no question of the power of the counties to employ the appellant in its work has been raised in this case by one qualified, we are not called upon to determine such a question. We may, however, assume without deciding, that the counties are still liable. Then we have outstanding concurrently two obligations, as occasionally happens, both being obligations to the public, one the obligation of the counties and the other the obligation of the contractor, to do the work without injury to the public through negligence. If the injured party chooses to sue the counties alone, we might then have the question which the appellant has raised, but if, as in this instance, the injured party elects to sue both the contractor and the counties, then the rule is that the one whose positive act inflicts the injury is primarily liable to the injured party without regard to the liability of the other, leaving the parties sued to adjust their liabilities, one to the other, according to their contractual undertakings. Wilson v. Watertown, 3 Hun (N. Y.) 508; Tierney v. Troy, 41 Hun (N. Y.) 120, 121.

As in this case the appellant undertook to operate the bridge and to assume "sole responsibility for accidents" therein, and as the court has found that the injury was inflicted by its acts, it is primarily liable, and we need not inquire merely because the negligence was inflicted upon a highway of navigation, whether the counties for which the appellant was acting are liable also. Casement v. Brown, 148 U. S. 615, 623, 13 Sup. Ct. 672, 37 L. Ed. 582.

The appellant further contends that the action should have been dismissed because the contract between it and the counties could not inure to the benefit of a vessel damaged. This action is not brought against

the appellant on its contract with the counties. Injury to a vessel from negligence in operating a draw is a maritime tort, and it is for such a tort and not upon the contract that this action is brought. The contract is evidence of the identity of the party operating the bridge and inflicting the injury, and the ground of this action in admiralty is its negligence in that operation.

The award of costs was within the discretion of the trial court and we cannot say that it abused its discretion.

The decree below is affirmed.