290 F.2d 685
 SHELL PETROLEUM COMPANY, LIMITED, a corporation in its own behalf as Owner of the Motorship Lembulus
v.
Charles PESCHKEN, Appellant and
Canolius V. Hines and Fred W. Bents.
 No. 13481.
 United States Court of Appeals Third Circuit.
 Argued May 2, 1961.
 Decided May 23, 1961.
 
 Theodore I. Botter, Trenton, N. J. (David D. Furman, Atty. Gen., of New Jersey, Attorney for Respondent-Appellant, Alfred P. D'Auria, Elias Abelson, Dep. Attys. Gen., on the brief), for appellant.
 Robert M. Julian, New York City (Francis E. P. McCarter, Newark, N. J., McCarter & English, Newark, N. J., on the brief), for appellee.
 Before GOODRICH, STALEY and FORMAN, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This is an appeal from an interlocutory decree for the libellant in an admiralty case. The ship Lembulus, owned by The Shell Petroleum Co., Ltd., collided with a drawbridge known as the Lincoln Highway Bridge on December 20, 1957. At the time of the collision the bridge was in the process of opening. The respondent Peschken was the chief drawbridge operator of the bridge. Two other persons who were part of the bridge crew were sued in the court below but the action against them was decided in their favor and there has been no appeal. The district court opinion may be found in D.C. N.J.1960, 184 F.Supp. 950. This opinion was somewhat modified later by a letter which is not reported. The question to be decided in this case is a much simpler one than the oral argument by the parties and their briefs would indicate.
 
 
 2
 The Lembulus discharged its cargo at Kearney Point, New Jersey, some distance north of the Lincoln Highway Bridge, the locus of the collision. She was taken out into the channel of the Hackensack River with the help of tugs and started downstream. As the vessel was in the vicinity of the Pulaski Skyway approaching the Lincoln Highway Bridge, she gave three blasts of her whistle to indicate to the bridge operators that she desired to pass through. This signal was answered by two blasts from the bridge. It may be that this two-blast signal was repeated by the bridge but the court made no finding to this effect and whether a second two-blast signal was given is not material to our determination of this case. At the time the bridge answered the ship with the two-blast signal those in charge immediately began the process of opening the draw. No one from the bridge gave a three-blast signal which would have indicated to the ship that she could come ahead. The ship proceeded in the direction of the bridge. The bridge mechanism either stopped momentarily or slowed down so that the draw was not fully open at the time when the Lembulus reached the bridge. She hit the partially opened draw with both her fore topmast and main topmast. This is the damage complained of.
 
 
 3
 The legal problem presented by the above facts seems to us one which can be settled quickly. The Secretary of the Army, by statute, (33 U.S.C.A. § 499) has authority to make rules and regulations to govern the opening of drawbridges for the passage of vessels on navigable waters. Such regulations have the force of law. Cf. Belden v. Chase, 1893, 150 U.S. 674, 14 S.Ct. 264, 37 L.Ed. 1218. The portion of the regulation applicable to the case before us is found in 33 C.F.R. 203.200 (1949). Here is the relevant language: "(d) When a vessel approaches within signaling distance of a bridge for passage, the master thereof shall signify his intention by three blasts of a whistle or horn * * *. The signal of the craft shall be immediately answered by the tender or operator of the bridge. If the draw is ready to be immediately opened, the answer shall be three blasts of a whistle or horn from the bridge. In case of delay in opening the draw, as is provided for in this section, or as may be necessary by accident to the machinery or other contingency, the signal from the vessel shall be answered by two long blasts of a whistle or horn from the bridge. In all cases when delay signals have been given, a signal of three blasts of a whistle or horn shall be given as soon as it is possible to open the draw."
 
 
 4
 The Lembulus disobeyed the rule as is readily apparent from the statement of facts given above and reading the command set out in the rule. She signaled properly in approaching the bridge. But the bridge responded with the caution signal and under the rules that is the effective signal until removed by a three-blast signal from the bridge. It appears from the evidence that there had been some difficulty with the mechanism of the draw raising apparatus. The two-blast signal was quite proper under those circumstances and had it been obeyed the collision would not have occurred. The error on the part of the learned trial judge was in his statement that the immediate response to the Lembulus's signal was the beginning of the operation to raise the bridge. The judge thought that this was an invitation to continue forward on the part of the bridge operator and, we suppose, withdrawal of the warning given by the two-blast signal. The court relies on several cases where it has been said that in the absence of warning to the contrary a ship approaching a bridge may assume the bridge will be open when it arrives.[1] Those cases are completely reconcilable with our conclusion here. Peschken, operating the Lincoln Highway Bridge, did give the warning signal. Perhaps he gave it twice. And no three-blast "come ahead" was given. The ship is clearly at fault. If her failure to obey the signal contributed to the collision, she cannot recover under the rule of The Pennsylvania, 1873, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148. But we do not need the authority of The Pennsylvania to decide this case against the libellant. The disobedience of the rule was the substantial cause of the collision.
 
 
 5
 Language from Belden v. Chase, cited above, is apposite to the situation here. Speaking of the rules the Court said, "They are not merely prudential regulations, but binding enactments, obligatory from the time necessity for precaution begins, and continuing so long as the means and opportunity to avoid the danger remain. * * * Obviously, they must be rigorously enforced in order to attain the object for which they were framed * * *" Id., 150 U.S. at page 698, 14 S.Ct. at page 271.
 
 
 6
 Our view of the case makes it unnecessary to decide at what point the vessel turned so as to proceed bow foremost downstream. It is also unnecessary for us to consider the disputed question of the speed of the Lembulus as she approached the bridge. Whether she was going fast or slow does not matter because she disobeyed the rule, whatever was her speed.
 
 
 7
 The judgment of the district court will be reversed and the case remanded with directions to enter judgment in favor of the respondent.
 
 
 
 Notes:
 
 
 [1]
 The Louise Rugge, 3 Cir., 1917, 239 F. 458; Munroe v. Chicago, 7 Cir., 1912, 194 F. 936, certiorari denied 1913, 229 U.S. 609, 33 S.Ct. 464, 57 L.Ed. 1350; Clement v. Metropolitan West Side El. Ry. Co., 7 Cir., 1903, 123 F. 271; Conners Marine Co. v. New York & Long Branch R. R. Co., D.C.N.J.1950, 87 F. Supp. 132; The Kard, D.C.E.D.Pa.1930, 38 F.2d 844