CLEVELAND J. MARCEL, SR., Judge Pro Tern.
This appeal by plaintiff, Melbourne Brothers Construction Company (Melbourne), results from a judgment dismissing plaintiff’s suit for property damages filed against defendants, Gnots-Reserve, Inc. (Gnots-Reserve) and Mid-Stream Transfer, Inc. (Mid-Stream).
Plaintiff, Melbourne, a subcontractor to Williams Brothers Construction Company, was hired to erect the structural steel above the piers and related cable work on the Luling-Destrehan bridge project in St. Charles Parish. In order to accomplish this task, Melbourne had to have scaffolding under the bridge at certain periods during the project.
Defendant Mid-Stream was the owner of the barge Gemini, a floating grain elevator lacking independent power. On two separate occasions, April 2, 1982 and April 12, 1982, while the bridge was under construction, plaintiff alleges that the superstructure of the Gemini contacted and damaged their scaffolding attached to the underside of the Luling-Destrehan bridge. On each occasion, the Gemini was in tow of three tugboats owned and/or operated by defendant Gnots-Reserve.
Plaintiff instituted the action in state court on December 21, 1982, under the savings to suitor’s clause, 28 U.S.C. § 1333. Following trial on the merits, on September 27, 1983, the court rendered judgment in defendants’ favor, dismissing plaintiff’s suit. Plaintiff thereupon perfected an appeal of that judgment alleging as error:
that (1) the trial court erred in holding plaintiff failed to provide appropriate notices concerning its scaffolding; that
(2) the trial court erred in admitting hearsay evidence concerning guaranteed clearances; that
(3) the trial court erred, under applicable admiralty principles, in failing to find defendants negligent in the operation of the tow which negligence was the cause of plaintiff’s damage; and that
(4) the trial court erred in barring all recovery by plaintiff by failing to invoke admiralty law’s comparative negligence doctrine.
At the outset, it should be noted that this case involves two separate incidents in which the M/V Gemini struck and damaged plaintiff’s property. The trial court found that plaintiff was not entitled to relief because plaintiff failed to warn those travers *1147 ing the river of the placement of the scaffolding which was necessitated by the ongoing construction of the bridge. The placement of scaffolding, in turn, reduced the clearance under the bridge in those specific areas. The trial court found, in addition, that the second accident on April 12, 1982 was plaintiffs fault in that a safety net connected to the scaffold was improperly loaded with equipment and material, causing it to sag several feet below the scaffold which reduced the clearance even further.
In regard to the notice question, appellant concedes that there is a duty upon those who obstruct navigable waterways to warn the users of the activity. Appellant asserts, however, that they provided the necessary information to the Coast Guard who apparently failed to include the information in the local Notice to Mariners, a publication relied upon by users of the river to indicate obstructions and other information pertinent to the operation of vessels on navigable waterways. That failure, appellant claims, cannot be attributed to them as they did all that was required. Further, appellant asserts that even if the notice was inadequate, the lack of notice was not a contributing cause of the accidents.
The evidence presented by appellant consisted solely of the testimony by Mr. T.L. Woodard, Erection Manager for Melbourne, whose responsibility extended to all steel erection work done by the company, including the Luling-Destrehan bridge. His office and base of operations was in Ohio, but he travelled to this area two or three times a month to check on the progress of the job. He testified the Lul-ing-Destrehan job required Melbourne to erect all the structural steel above the piers and the cables to complete the Luling-Des-trehan bridge. He was not present at the scene of either accident, but received reports from the Luling office of the collisions, and subsequently received reports of the repair costs, etc. He did not supervise nor did he actually see the damages claimed to the structure on either occasion. He did testify that six diagrams of the construction phases were sent to the Coast Guard indicating two locations of the bolt scaffolding, which were to be attached to the underside of the bridge spans located on either side of the river as the construction of the spans progressed toward the middle of the river. Clearances on the diagrams were clearly marked including the area beneath the location of the scaffolding. He admitted, however, that he was not the actual person responsible for either the preparation of the diagrams or for sending those documents to the Coast Guard; but that it was the responsibility of the engineer, Mr. Gordon Tumbleson. Mr. Tumbleson, at time of trial, was deceased. Mr. Woodard further testified that he did not personally speak with anyone from either defendant’s offices regarding the clearances. The superintendent in charge of the site, at time of trial, was no longer employed by Melbourne, and was not brought as a witness nor were any other witnesses presented by appellant.
Appellees, on the other hand, presented testimony indicating that the river pilots relied upon the Notice to Mariners publication to inform them of necessary information regarding vessel operations on the river. The documents introduced were from February to September, 1982. While several mention the Luling-Destrehan bridge construction, no warning notice of the scaffolding creating an obstruction and reducing clearance appears until the September issue. In February, however, prior to the accidents, a warning was issued related to the falling of a bolt scaffolding into the river and was subsequently noted again after salvage operations failed to retrieve the entire structure. Appellee’s witnesses also testified that prior to both accidents, they telephoned Melbourne’s office and received a clearance report from a Mr. Hanson with no mention of the scaffolds or their placement. In appellant’s second assignment of error, he complains that the testimony regarding Mr. Hanson is inadmissible as hearsay. Mr. Hanson, according to appellant, was the state representative on the job and not an employee.
*1148 As to the hearsay objection, we do not agree with appellant's contention as a review of the testimony reveals that the testimony presented by Mr. Dan Wise, Vice-President of Gnots-Reserve, was not elicited for the truth of the matter asserted, i.e., the actual clearance, but for the proposition that appellee acted reasonably in attempting to discover from Melbourne whether the Gemini could move under the bridge without difficulty on both occasions.
Based on the foregoing evidence, we find that the trial judge was not clearly wrong in determining that appellant failed to provide adequate notice. In the absence of such, this court is precluded from disturbing those findings under both the state and federal jurisprudence. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A.; George W. Bennett Bryson & Company, Ltd. v. Norton Lilly & Company, Inc., 502 F.2d 1045, 1975 AMC 1732 (5th Cir.1974). However, that finding does not automatically preclude appellant’s recovery under applicable admiralty principles.
Appellant, in its third and fourth specifications of error, complains that the trial judge erred in failing to find defendant solely at fault or mutually at fault in applying the comparative negligence doctrine applicable in admiralty actions.
In this regard, appellant argues the well established admiralty rule that there is a presumption of fault or negligence on the part of a moving vessel which strikes a fixed object. As stated in Brown & Root Marine Operators, Inc. v. Zapata Offshore Company, 377 F.2d 724 (5th Cir.1967):
“When a moving vessel collides with an anchored vessel or a fixed object, there is a presumption the moving vessel is at fault. (Citations omitted). The presumption suffices to make a prima facie case of negligence against the moving vessel.”
However, a tow lacking independent motive power which is under the sole control and management of a towing vessel is not responsible for damages occasioned by the navigation of the towing vessel. Sturgis v. Boyer, 24 How. (65 U.S.) 110, 16 L.Ed. 591 (1861), Walker v. Tug Diane, 350 F.Supp. 1388, 1389 (D.V.I.1972).
In a flotilla arrangement (tug and tow) in which the tug is in sole control, the tug is presumably at fault in a collision with a stationary object. Ryan Walsh Stevedoring Company, Inc. v. James Marine Service, Inc. et al, 557 F.Supp. 457 (E.D.La.1983); Bunge Corporation v. M/V Furness Bridge, 558 F.2d 790 (5th Cir.1977). As stated in Gilmore and Black, The Law of Admiralty, (2d Ed 1975) § 7-14 at page 516:
“(t)he unity of tug and tow is not carried to the point of imposing liability upon the flotilla as a whole for faults in navigation. Instead, the courts have worked out a concept of ‘dominant mind’, the upshot of which is that only that vessel is liable whose people are actually in control of the operation....”
See Alter Co. v. M/V Miss Sue, 536 F.Supp. 313, 314 (E.D.La.1982).
Appellant’s allegations of negligence against defendant, Mid-Stream, the owner of the towed vessel, the Gemini, is first predicated on an alleged duty upon personnel aboard the tow (the Gemini) to observe and warn the tug of hazardous conditions. However, the facts clearly show that the tug was in sole control of the flotilla, and the mere presence of personnel aboard the tow is inconsequential under the jurisprudence. Sturgis v. Boyer, supra; Walker v. Tug Diane, supra. As stated by the court in Walker, at page 1389, “the crew of the two were not expected to participate in the navigation of the vessel and were not guilty of any negligence or omission of duty by refraining from such participation.”
Secondly, appellant argues that Mid-Stream was obliged, “to ascertain that its vessel could clear the scaffolding under the bridge.” We agree with Mid-Stream that the contention is erroneous, as both *1149 Gnots-Reserve and Mid-Stream were intimately aware of the barge’s height by experience with the vessel as well as by the fact that Gnots-Reserve, in fact, obtained an accurate measurement of the barge’s height, which was reported in various brochures and other publications. The facts further show that Gnots-Reserve attempted to ascertain potential clearance hazards from Melbourne. Finally, the contention is irrelevant factually if we accept appellant’s allegation, which is supported by the evidence, that the barge could safely have been towed beneath the uncompleted sections of the bridge without striking the scaffolding. Consequently, in our opinion, the trial court did not err in dismissing Mid-Stream under the jurisprudence and the facts.
As far as Gnots-Reserve is concerned, the applicable legal principles must be analyzed under the facts of each separate accident. As stated earlier, the moving vessel is presumed at fault when it strikes a fixed object. Brown & Root Marine Operators, Inc. v. Zapata Off-shore Company, supra. The presumption is, of course, rebuttable. Appellee asserts, however, the proposition that the right to navigate is paramount to the right to maintain bridges over waterbodies, and that bridges are obstructions to navigation. St. Louis-San Francisco Railway Company v. Motor Vessel D. Mark, 1965 AMC 2105, 243 F.Supp. 689 (S.D.Alabama 1965); Shell Petroleum Co. v. Peschken, 184 F.Supp. 950 (D.N.J.1960), reversed on other grounds, 1961 AMC 1755, 290 F.2d 685, cert. denied, 368 U.S. 90, 82 S.Ct. 172, 7 L.Ed.2d 96, 1961 AMC 2703; 33 U.S.C.A. § 494. However, the vessel is still subject to the “rules of the road” as found in 33 U.S.C. § 2001 et seq. 33 U.S.C. § 2005 states:
“Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.”
As stated in Penn Central Company v. Buckley & Co., 293 F.Supp. 653 (N.J.1968), at page 659:
“In exercising their right of navigation the defendants, of course, are required to exercise reasonable care, to avoid damaging the lawful installations of the plaintiff.”
Finally, under the law, pilots are deemed to be knowledgeable about currents and sets. Bouchard Transportation Co., Inc. v. Tug Gillen Brothers, 389 F.Supp. 77 (S.D.N.Y.1975). In citing from a United States Supreme Court case, Atlee v. the NW. Union Packet Company, 88 U.S. (21 Wall.) 389, 22 L.Ed. 619 (1875), the court noted in Petition of M/V Elaine Jones, 480 F.2d 11 (5th Cir.1973) at page 20:
“The pilot of a river steamer ... is selected for his personal knowledge of the topography through which he steers his vessel ... He must know where the navigable channel is.... He must also be familiar with all dangers that are permanently located in the course of the river_ To do this he must be constantly informed of changes in the current of the river, of sandbars newly made, of logs or snags, or other objects newly presented against which his vessel might be injured.”
On the day of the first accident, the evidence shows that the collision occurred in daylight with no adverse weather conditions. Appellee, Gnots-Reserve, presented no evidence that the scaffold, which all parties agreed was struck and damaged, was not visible to the pilot in time to avoid collision, nor did they present any other evidence to show the accident was unavoidable. However, that testimony established that there were current entanglements at the bridge at all times which would cause the vessel to be pushed toward the east bank prior to going through the bridge and which would push the vessel to the west bank as the bridge was passed. In the absence of rebuttable evidence, the presumption applies in this type of factual situation; and, consequently, we find that *1150 while the first collision on April 2,1982 was in part caused by appellant’s failure to provide proper notice, the majority of the fault lies with appellee in not maintaining a proper lookout. The second accident, on the other hand, is another matter.
The accident on April 12, 1982 happened again on a clear day with no adverse weather conditions existing. Gnots-Re-serve admits in brief that they knew the scaffolding existed on that day. The testimony regarding this accident, however, revealed first that the scaffold structure, contrary to appellant’s assertion, was not struck. The eyewitnesses stated that the superstructure “hung up” on a safety netting and possibly a cable sagging several feet below the scaffold bottom. The witnesses testified that the safety net was apparently being utilized to store equipment and material and that the weight of those items caused the sagging. Mr. Woodard, appellant’s witness, agreed that such action would be improper as the calculations for clearances were based on the vertical feet from the bottom of the scaffolding. Thus, the equipment reduced the clearance further. The pilot testified that the net became visible at 75 feet, and that the flotilla could not be maneuvered to avoid striking the net within that distance. All parties agree that the Gemini would have cleared the bridge and the scaffold but for the sagging safety net.
Thus, we conclude that appellee presented sufficient evidence to rebut the presumption of liability by showing that appellant’s own actions caused the alleged damages. Consequently, the trial court was not clearly wrong in dismissing appellant’s claim for damages occurring on April 12, 1982.
Anticipating a finding in their favor, in whole or in part, appellant urges the court to address the issue of comparative fault and the consequential apportionment of damages. As appellant correctly states, under the Supreme Court’s rule of apportioned damages as set out in United States v. Reliable Transfer Company, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), the court must apportion the award based upon each party’s percentage of fault in admiralty collision actions. As noted earlier, we have found that as to the first accident on April 2, 1982 only, appellant Melbourne is entitled to some recovery as both appellant and appellee, Gnots-Reserve, contributed to the damages. Thus, we hereby reverse this portion of the trial court judgment and assess 75 percent of the fault to defendant, Gnots-Reserve, and 25 percent to appellant, Melbourne, for the April 2, 1982 collision.
In this regard, appellant produced sufficient evidence to support its claim in the amount of Four Thousand, Four Hundred Thirty-Eight Dollars and Fifty-Eight Cents ($4,438.58). Calculating the apportionment herein stated, this entitles appellant to recovery in the amount of Three Thousand, Three Hundred Twenty-Eight Dollars and Ninety-Three Cents ($3,328.93).
Accordingly, as to that portion of the trial court judgment herein reversed:
It is hereby Ordered and Decreed that there be judgment in favor of plaintiff, Melbourne Brothers Construction Company, and against defendant, Gnots-Reserve, Inc., for the amount of Three Thousand, Three Hundred Twenty-Eight Dollars and Ninety-Three Cents ($3,328.93), plus legal interest from date of judicial demand. All costs in this matter are to be divided equally between plaintiff, Melbourne Brothers Construction Company, and defendant, Gnots-Reserve, Inc.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.