## VALVOLINE OIL CO. v. DAVIS, Director General of Railroads.

(Circuit Court of Appeals, Second Circuit. April 3, 1922.)

No. 272.

1. **Navigable waters ⬡⟹20(8)—Operator of drawbridge liable for bridge tender's failure to raise draw to sufficient height.**

Where a drawbridge tender not only had his attention directed to the height of a pile driver being towed through the draw, but had the opportunity of visual inspection as she came forward, it was his duty to raise the draw to a proper height to permit it to pass safely, and the operator of the bridge was liable for the damage from his failure to do so.

2. **Navigable waters ⬡⟹20(8)—Tug and tow not at fault in colliding with drawbridge.**

A tug and a pile driver towed by it, the superstructure of which extended about 60 feet above the deck and collided with the draw of a bridge, because not raised to a proper height, *held* guilty of no fault contributing to the collision.

---

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Valvoline Oil Company against James C. Davis, Director General of Railroads, as Agent operating the New York, New Haven & Hartford Railroad Company. Decree for respondent, dismissing libel. Libelant appeals. Reversed.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for appellant.

Charles M. Sheafe, Jr., of New York City (Edward R. Brumley, of New York City, of counsel), for appellee.

Before HOUGH and MANTON, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

MANTON, Circuit Judge. The appellee maintains and operates a drawbridge over the Eastchester creek. On the 29th of October, 1918, pile driver No. 1, in tow of the tug Magnet, came into collision with this draw under circumstances herein stated and received damage for which this libel is filed. There are two bascule bridges over the creek near the entrance into Eastchester Bay. The bridge nearest the bay is a public highway bridge. The base upon which the leaf in the railroad bridge rises is located on the south or port side of a vessel bound upstream. The bridge in question is upon the branch of the railroad line running from New Rochelle to Port Morris, and then over Hellgate Bridge to the Pennsylvania Terminal in New York City.

The tug is owned by the appellant, and was bound for its plant located above the railroad bridge, so that it became necessary for the tug to bring her tow through both bridges in order to land at the point of destination. The tug, with its tow, arrived in Eastchester creek at about dusk in the evening. The pile driver was alongside on the port side, and a raft of piles made fast on the stern of the tow. The superstructure of the pile driver extended about 60 feet above the deck and was on its further end. The No. 1 had a motor launch as part of her equipment, which assisted in the towing service. As the tug approached the bridge, it blew a signal. The motorboat dropped astern on a line to help steer the tow through the draw. It did not go back alongside the tug until after the collision. One witness testified that he told the draw tender in charge that a tug and pile driver and tow was coming, and asked him to raise the draw straight up, to which the employee replied:

"Thank you; I am very much obliged, because we don't usually raise the draw only a part of the way."

In due time the tug blew to the man in charge on the railroad bridge. No reply was given, and the draw was held against her because a train was due to pass over the bridge in about 10 or 15 minutes. The tide was running strong flood, the wind light, and the weather was clear. The master of the Magnet went slowly and carefully up and made fast to the fender piles or racks of the railroad bridge on the starboard side, in order to hold the tow in position until such time as the draw was open for him to pass through. This became necessary, because

of the strong flood tide, as it was impossible to hold the tow and the raft of piles in line in the stream. As the Magnet lay, she was close to the bridge itself and almost under the draw as it raised. When she landed, the motor boat remained at the farther end of the raft of piles, so as to hold the tow in position while the tug waited, and thereafter it assisted in guiding it through the draw. This put the motorboat about 300 feet back from the bow of the tug. After a lapse of 10 or 15 minutes, a train passed over the draw, and thereupon the draw keeper came out with some hand lanterns and set them. There were no oil lamps, and no electric lights were exhibited. Thereupon he lifted the draw for the passage of the tug and tow.

During the interval, and before the draw started to raise, the captain of the Magnet called the attention of those in charge to the fact that the superstructure of the pile driver extended 60 feet above the deck of that vessel, and requested them to be sure to get the draw high enough, so that he could pass through with safety. Thereupon the tender of the bridge ordered the tug to come ahead, stating at the same time that they were in a hurry to get the draw closed. The men were on the bridge directly ahead of the tug. After these orders, the master of the tug took in the lines between the vessel and the railroad track and started through. The drawbridge keeper failed to raise the draw high enough, and the upper end of it caught the top of the superstructure of the pile driver, parted the guys which supported it, and then fetched up under the head of the mechanism. Then the draw keeper proceeded to draw the bridge up higher, and pulled the head off, thereby increasing the damage very materially. The tug cast off line, but she could not prevent the contact. The master of the tug said, because of his position under the draw, he could not judge whether the draw had been sufficiently raised, so as to clear the superstructure. There was no proof offered on behalf of the appellee.

[1] These facts require a decree in favor of the appellant. Passing the claim of negligence in failing to open the draw promptly, so as to permit the pile driver to pass before the arrival of the train, we think the liability may be predicated upon what did actually take place just before the opening of the draw and while the tug was passing through. It was the duty of the draw tender to raise the draw to a proper height, so as to permit the pile driver to pass safely. Ample notice was accorded to the bridge tender. His attention was not only directed to the height of the pile driver, but he had the opportunity of visual inspection as she came forward. O'Keefe v. Staples Coal Co. (D. C.) 201 Fed. 136; Clement v. Met. West Side El. R. Co., 123 Fed. 271, 59 C. C. A. 289; The Louise Rugge (D. C.) 234 Fed. 768; Great Lakes Towing Co. v. Masaba S. S. Co., 237 Fed. 577, 150 C. C. A. 459. The proof is sufficient to warrant the claim of the appellant that notice was given to the bridge tender, and also that the person who ordered the tug forward was an employee of the appellee in charge on the bridge.

[2] We find nothing in the navigation of the Magnet or the tow which in any wise contributed to the happening of the collision.

Decree reversed.