**THE VICTOR.**

**PETERSON v. CITY OF MT. VERNON.**

District Court, S. D. New York.

Dec. 19, 1934.

916

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for libelant.

J. Henry Esser, Corp. Counsel, of Mt. Vernon, N. Y. (F. A. Bennett, of Mt. Vernon, N. Y., of counsel), for respondent.

HULBERT, District Judge.

The city of Mt. Vernon is a municipal corporation in the county of Westchester, state of New York, and at all of the times mentioned in the libel filed herein had control of the maintenance and operation of a highway drawbridge of the jackknife type, erected to carry traffic on Fulton avenue across Eastchester creek (also known as Hutchinson river), a navigable waterway flowing into Long Island Sound.

On November 27, 1928, the lighter Victor, owned by Charles W. Peterson, was bound up Eastchester creek in tow of the tug Pelham in tandem on two six-foot hawsers, carrying a cargo of 200 tons to the plant of the Hutchinson River Supply Company located on the west bank of said creek just north of the said Fulton avenue bridge.

The lighter measured about 82' long, 28' or 30' beam with 8' or 9' sides. When loaded, the lighter had 1½ or 2 feet free board, and when light 6' to 7' free board, with a draft in the latter case of 1½' to 2'. She had a mast 75' long extending about 67' above deck.

When the tug Pelham was about 2,000 feet below the Fulton avenue bridge, she sounded four-whistle blasts as a signal to open the draw. The bridge tender testified there was no mechanical contrivance maintained upon the bridge for the purpose of signaling to approaching boats, but it was the practice to close the gates and raise the draw immediately. The captain of the towboat testified such was the fact in this instance, and that, when within 30 or 40 feet of the bridge, he asked the bridge tender if the bridge was up, and, receiving a reply in the affirmative, proceeded on his way, hugging close to the shore on his starboard, from which side the draw raised to an oblique angle from the opposite side; the bridge tender testified that the draw was 90' long and 80' wide, and could be raised to a height of 90', but that, soon after this bridge was installed about seven or eight years ago, in raising it to its full height it stuck, so that traffic was suspended for several hours, and he painted a white line to indicate when the draw would be at a height of 85', and always raised it to that height. Before the lighter had passed completely under the draw its mast struck one of the girders on the underside. The tug and tow stopped. The captain of the tug called to the bridge tender, who raised the bridge releasing the mast, so that tug and lighter proceeded to the dock on the west or opposite side of the river when the injury to the mast was discovered and, after discharging cargo, the lighter was taken to dry dock, a survey was had, and repairs were made.

The bridge tender was the only witness called by the respondent. He denied that any accident had occurred or that he had any recollection of said tug and tow having passed through, and, although he was informed within two days of the libelant's claim, he never went to the dock of the Hutchinson River Supply Company to examine the lighter or investigate the claim.

The bridge tender further testified that the bridge was electrically operated by means of three push buttons in a switch box, one to lift, one to stop, and one to lower; that after he pushed the lift button he never pressed the stop button until the aforesaid white line indicated that the draw had been raised to a height of 85 feet. If his testimony were to be believed, there was, of course, ample clearance for a lighter with a mast extending 67 feet above the dock plus 2 feet free board.

Respondent contends that, if the accident did happen at the Fulton avenue bridge, it was due to the negligent operation of the tug and tow, in that, after the tug had passed through the channel under the draw close to the east shore, it had changed its course in order to cross the channel to reach the plant of the Hutchinson River Supply Company on the opposite side, and in so doing had pulled the lighter a sufficient distance under the draw so that the mast struck on one of the girders on the underside of the lift. In the absence of proof, that is a mere conjecture. As well might the libelant assert that the bridge tender had begun to lower the draw when the tug was free of the bridge, but before the mast of the lighter had cleared. The fact that the bridge tender raised the draw and released the mast indicates that the draw had not been raised to its proper height, and creates a presumption of negligence which the respondent has failed to overcome.

The evidence in this case is that the channel at Eastchester creek approaching the Fulton avenue bridge is only 80 feet wide, and it was necessary for the tug and tow to

move up stream at that point on the flood of the tide.

Moreover, the testimony of the tug captain is uncontradicted that he inquired if the bridge was up, and was assured that it was, which, coupled with the testimony of the bridge tender that he always raised the bridge to the full height of 85 feet, leads to the conclusion that the respondent was solely at fault. See Valvoline Oil Co. v. Davis, etc. (C. C. A.) 282 F. 218.

Accordingly, the libelant is entitled to a decree against the city of Mt. Vernon, with the usual reference to ascertain the amount of the damage.