SANTA ROSA ISLAND AUTHORITY et al., Appellants,

v.

F. RUST SMITH & SONS, INC., Appellee.

No. 18871.

United States Court of Appeals Fifth Circuit.

May 30, 1962.

Robert P. Gaines, of Yonge, Beggs & Lane, Pensacola, Fla., for appellants.

Joe J. Harrell, Jones & Harrell, Pensacola, Fla., for appellee.

Before HUTCHESON, WISDOM and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

A barge loaded with a derrick owned by appellee was being towed through the intracoastal waterway at night, and while passing through the draw span of the Pensacola Beach Bridge across Santa Rosa Sound the boom of the derrick struck the south bascule leaf of the bridge twenty one inches from the outer extremity of the leaf while it was in an open position. A libel in personam was filed against appellant alleging damage to the derrick caused by the negligence of an agent or employee of the Authority while acting as bridge tender. Judgment was rendered in favor of appellee for the damages sustained and this appeal was taken therefrom.

Appellant denied that the requisite statutory notice had been given it and also denied that the bridge tender was its agent or employee, or that he was negligent in any event, and the case was tried on these issues. The errors specified here embrace these denials, and assuming the negligence of the bridge tender *arguendo*, whether half damages rather than whole damages should have been awarded because the tug operator was also negligent.

Appellant was created by the Legislature of the State of Florida, Special Acts of 1947, Chapter 24500, with its board members, also named as respondents in the libel, to be appointed by the County Commissioners of Escambia County. It was to be used for such purposes as the commissioners should deem to be in the public interest. Section 7 of the creating Act provides:

"No suit, action or proceeding shall be instituted or maintained in any Court against the County or the Authority for or upon any claim, right or demand of any kind or nature, other than those arising out of contract, unless within 30 days after the alleged accrual of such claim, right or demand, a notice in writing is filed with the County or the Authority, as the case may be, signed by the claimant or his agent, setting forth the nature of such claim, right or demand, the amount thereof and the place and manner in which such claim, demand or right accrued, all with sufficient detail to enable the County or the Authority to make a full investigation thereof; and no such suit, action or proceeding shall be instituted within three months after such notice shall have been given."

Appellee filed an exception to the libel on the basis of insufficient notice, and this having been overruled, moved to dismiss at the trial on the same ground. The trial court again overruled this contention and we affirm. The morning following the collision an officer of appellee contacted the manager of the Authority and notified him of the collision. The manager instructed him to notify the Florida State Road Department and this was done through the medium of a letter with a copy to the manager of the Authority. The letter set forth the details of the incident, stating time, place and the cause of the damage, but the amount of the damage was not stated. The letter indicated a claim would be made in the following language: "This is to notify you that we expect to press a claim not only for the damage to the derrick, but also for the loss of use of the equipment since it was in constant daily use on one of our construction jobs." The incident was discussed at the next regular meeting of the Authority. The State Road Department thereafter denied liability by letter "pending investigation."

█ In Florida as a general rule substantial compliance with notice requirements is sufficient to maintain an action against a municipality or governmental authority. Hammontree v. City of Tampa, 1933, 108 Fla. 343, 146 So. 556; Crumbley v. City of Jacksonville, 1931, 102 Fla. 408, 135 So. 885 and 138 So. 486. In Kibbe v. City of Miami, 1931, 103 Fla. 793, 138 So. 371, it was held that municipal authorities may waive mere defects in the manner and form of notice. In Tillman v. City of Pompano Beach, Fla. 1957, 100 So.2d 53, 65 A.L.R.2d 1273, the city was held estopped to deny that the notice was insufficient where it appeared that the official had actual notice and had actually investigated the accident.

█ Here appellee actually notified the manager of the Authority and was directed by him to submit the written notice to another governmental agency or department. There is no claim that the notice was insufficient as a means of affording the Authority opportunity to make a full investigation, the purpose of the notice requirement. Under these particular circumstances we hold that there was both a waiver and an estoppel. And Buck v. City of Hallandale, Fla., 1955, 85 So.2d 825, holding that there was not substantial compliance with the notice

requirement is not to the contrary in view of the facts here.

■ Nor do we think there is any merit in the contention that the bridge tender was not the employee of the Authority, the manager and supervisor of the bridge operation. The Authority selected, employed, trained and paid him and could discharge him. Its manager was his "boss".

"He is deemed to be the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate results of the work, but in all the details." Childers v. C. I. R., 9 Cir., 1935, 80 F.2d 27, 30; 56 C.J.S. Master and Servant § 1b.

■ We also affirm the holding of the trial court that the sole proximate cause of the accident and ensuing damage was the negligence of the bridge tender. The tug operator was not negligent and it was therefore not error to assess full damages against appellant as distinguished from only half damages. In reaching this conclusion we test the judgment on the clearly erroneous rule. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A.

The evidence which formed the basis of the findings and conclusions, in some respects disputed, was that the bridge covered the navigable waters of Santa Rosa Sound. The vessel was traveling east to west and the bridge runs generally in a north and south direction. The bridge is a bascule type, having two leaves which are hinged upon the bridge and open upward at the center.

The bridge tender was the collector of tolls and operator of the bridge draw span. The collision occurred about 10:45 P.M. Sometime prior to the time in question the tender noticed several ships to the east and especially noticed one proceeding very slowly. When it was two hundred to two hundred and fifty yards away he became convinced by its steady progress down the channel that it intended to go through the span. He testified that it gave no signals but he did realize that it was coming through. The operator of the boat testified that he gave signals on two occasions, first the customary three blasts, and then some ten or fifteen minutes later an additional three blasts. He was proceeding at a speed of three to four miles per hour. The bridge tender in his customary way proceeded to operate the draw bridge to let the vessel in question and its tow pass through. He stopped traffic and pushed the necessary button to automatically raise the bridge. The red lights on the bridge which appear when the draw is in place were functioning and visible to approaching vessels but red changes to green as the leaves are opened and this was the case here. The leaves of the bridge upon this action come to a predetermined stop at an angle of some forty five or fifty degrees from the plane of the water, but they could be raised by pushing another button to an approximate angle of eighty degrees. The width at the first stop between the leaves is eighty feet, and at the second position is one hundred and fifteen feet while the channel at this point is some one hundred thirty feet in width. The vessel was proceeding somewhat to the south of the center line of the channel.

The tender testified that it was his practice to open the leaves fully to the eighty degrees elevation when he saw anything that required it or when he was in doubt but that on this occasion he did not see anything to indicate that more than an opening to the first stop was required. The tender, after taking this action to raise the leaves to the first stop, proceeded as a part of his duties to get the number and the name of the vessel that was coming through. He had a five-cell flashlight and it would cast a light some three hundred yards. As the tug came through it suddenly dawned upon him that the tow might be loaded with something carrying a boom. With that he turned on his light and immediately saw the derrick on the barge under tow just prior to the collision. The

contact was between the south leaf of the bascule bridge at a point twenty one inches from its outer extremity and the top of the derrick boom.

He also testified that the lights on the tug were very poor and that there were none at all on the barge, but this avails appellant nothing as the deficiency in lighting did not contribute to the cause of the collision. Cf. The Virginia Jackson, S.D., N.Y., 1904, 130 F. 221. It is clear that had the leaves of the bridge been raised even a few degrees higher the boom of the derrick would have gone through without difficulty and that this failure to so raise the leaves was the sole proximate cause of the damages sustained.

Those who use the navigable waters have a right to assume in the absence of notice to the contrary that a bridge will be opened sufficiently wide for them to proceed through and this is particularly so where the green lights are on as was the case here. Whether or not signals were given by the tug is immaterial because the whole purpose of signals is to notify the bridge operator of his duty to open the bridge and the bridge operator testified that he had seen the vessel and opened the bridge for it. And the bridge is an obstruction to navigation and must be so maintained and operated as not to impede navigation any more than is absolutely necessary, the right of navigation being paramount. It is incumbent upon the owner of the bridge that it be so constructed as to readily admit the passage of craft, and the owner must place in charge those who are competent to operate the bridge, to watch for signals, and to open the bridge for the passage of craft. Furthermore, the vessel has the right to rely upon the bridge operator carrying out his clear duty to go through with the opening of the bridge in a satisfactory manner. The Kard, E.D.Pa., 1930, 38 F.2d 844; The Louise Rugge, 3 Cir., 1917, 239 F. 458; Wright & Cobb Lighterage Co. v. Snare & Triest Co., 3 Cir., 1917, 239 F. 482; and The Victor, S.D., N.Y., 1926, 9 F. Supp. 915.

Not only did the bridge tender fail to fully open the draw, but he also failed to make any effort to ascertain the nature of the approaching vessel and its tow until it was too late. He had both the time and opportunity to do this and it was incumbent upon him, if in doubt as to what was approaching, to give every benefit of that doubt to the approaching vessel by raising the draw to its fullest extent.

The conclusion of the trial court that the sole proximate cause of the accident was the negligence of the bridge tender in the operation of the bridge being amply supported, and no prejudicial error appearing, the judgment is

Affirmed.