**Frederick P. ADAMS, Respondent-Appellee,**

v.

**HARRIS COUNTY, TEXAS, Petitioner-Appellant.**

**No. 71–2267.**

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1971.

Rehearing and Rehearing En Banc Jan. 18, 1972.

---

Joe Resweber, County Atty., Augustus Venters Drake, Edward J. Landry, Anthony D. M. Sheppard, Houston, Tex., for petitioner-appellant.

James Kronzer, Brown, Kronzer, Abraham, Watkins & Steely, Houston, Tex., for respondent-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge.

This was a suit for permanent personal injuries suffered by a motorcyclist on a drawbridge across a navigable stream. The District Court denied a motion to dismiss for lack of admiralty jurisdiction. The opinion below is reported, 316 F.Supp. 938 (S.D., Tex., 1970). Upon interlocutory appeal to this Court, 28 U.S.C., § 1292(b), the judgment of the District Court is reversed. The cause is remanded with directions to dismiss the complaint for lack of admiralty jurisdiction.

On Easter Sunday, March 26, 1967, Mr. Adams, the plaintiff-appellee, was riding his motorcycle on a public highway which crossed Cedar Bayou, a navigable stream, by means of a bridge permanently connected to the roadway and suspended over the water by permanent pilings driven into the channel below. The bridge was equipped with a draw section, which was mechanically raised and lowered to permit the passage of vessels plying the stream. As Adams, on or near the bridge, approached the draw, a relatively small pleasure boat was likewise approaching. To quote the District Court, 316 F.Supp., at 940, "Without any indication from the vessel that it was necessary to do so, the bridge keeper caused the bridge to begin to open. At that instant, when plaintiff began to cross the bridge, the barricade lowered into place and was struck by the motorcycle. Plaintiff was thrown several feet into the air and fell either on the bridge or close by. His theory of recovery is negligent maintenance".

As to the locality of the injuries, this case is exactly similar to that which we decided in Cookmeyer v. Louisiana Department of Highways, 309 F.Supp. 881 (E.D., La., 1969); Affirmed, 5 Cir., 1970, 433 F.2d 386; cert. denied, 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 332. The only factual difference between *Cookmeyer, supra,* and the instant appeal, as to the locality of the alleged tort, is that in *Cookmeyer* the channel was opened for the passage of vessels by swinging barges on a pivot, whereas

here the bridge was opened for the passage of vessels by raising and lowering the draw section.

In *Cookmeyer*, the District Court held, 309 F.Supp. at 884:

"The accident forming the basis of this suit having taken place on a bridge, this Court lacks admiralty jurisdiction under the premise that a bridge or other structure firmly attached to the land is an extension of land and hence not a subject of the maritime jurisdiction of this Court."

We affirmed and the Supreme Court denied certiorari.

Therefore, so far as it reaches, *Cookmeyer* is controlling and there was no admiralty jurisdiction.

Plaintiff-appellant contends, however, that because the light pleasure craft was approaching the bridge and the draw was in the act of being raised to permit it to pass through the bridge, jurisdiction attaches by reason of the Admiralty Extension Act of 1948, 46 U.S.C., § 740:

"The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to persons or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

In Rodrigue v. Aetna Casualty Company, 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, the Supreme Court spoke as follows:

"Admiralty jurisdiction has not been construed to extend to accidents on piers, jetties, bridges, or even ramps or railways running into the sea. To the extent that it has been applied to fixed structures completely surrounded by water, this has usually involved collision with a ship and has been explained by the use of the structure solely or principally as a navigational aid. But when the damage is caused by a vessel admittedly in admiralty jurisdiction, the· Admiralty Extension Act would now make available the admiralty remedy in any event.

"The accidents in question here involved no collision with a vessel, and the structures were not navigational aids."

Again, in Nacirema Operating Company, Inc. v. Johnson, 1969, 396 U.S. 212, 222, 90 S.Ct. 347, 353, 24 L.Ed.2d 371, the Supreme Court elaborated upon the Extension Act:

"The Act no doubt extended the admiralty tort jurisdiction to ship-caused injuries on a pier. But far from modifying the clear understanding in the law that a pier was an extension of land and that a pier injury was not on navigable waters but on land, the Act accepts that rule and nevertheless declares such injuries to be maritime torts if caused by a vessel on navigable waters.

"The Extension Act was passed to remedy the completely different problem that arose from the fact that parties aggrieved by injuries done by ships to bridges, docks, and the like could not get into admiralty at all."

In this case we have navigable water and we have a vessel, albeit a light pleasure boat. The question, then is: Did the vessel cause the injuries to the motorcyclist on the bridge? The vessel was simply approaching the bridge, as any vessel in those waters had a right to do. There is no showing that it was negligent in any respect. It is not charged with a tort of any kind. It had no control, could exercise none, and attempted to exercise none over the manner in which the bridge keeper performed his duties. As mentioned in *Rodrigue* and in *Nacirema, supra,* there was no physical contact between the pleasure boat and the bridge. There was no damage to the bridge. There was no physical contact between the boat and the motorcycle. The District Court stated in its opinion, 316 F.Supp. at 940, that the bridge keeper caused the bridge to begin to open, which, in turn, caused the barricade to drop, without any indication from the vessel that it was necessary to do so. The inescapable conclusion is that the dropping of the

barricade was solely the act of the bridge keeper and no act of the vessel proximately caused his negligence, if there was any.

It inexorably follows that the injuries complained of were in no way caused by a vessel on navigable water. Jurisdiction is not saved by the Admiralty Extension Act.

At 316 F.Supp. 943, the District Court wrote as follows:

> "There is also an alternate theory upon which admiralty jurisdiction can be based. That theory is, notwithstanding the locality of the events which gave rise to this suit, the tort is one essentially maritime in nature. Consequently, torts occurring as a consequence of the operation of drawbridges are related to that purpose and are cognizable in a court of admiralty.

> "It has not been overlooked that the function of a bridge, as such, over navigable water is to allow vehicular and pedestrian traffic to pass from one side of the waterway to the other. The sole and exclusive function of a drawbridge, however, is to allow maritime traffic to pass along navigable water. Because a vessel was passing underneath the drawbridge in this case, and because plaintiff was injured by the movement of that bridge to allow passage, the relationship of those injuries is so substantially related to maritime commerce as to be embraced by admiralty jurisdiction."

This view is supported by no citation to precedent. It fails to take into consideration that the injuries in question occurred on a permanently fixed extension of land and in the absence of any maritime causation other than the approach of a vessel, without more.

The judgment of the District Court denying the motion to dismiss for lack of jurisdiction, is reversed. The case is remanded, with directions to dismiss the complaint.

Reversed and remanded, with directions.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.