Janet KARPOVS, Individually and as Personal Representative of Juris A. KARPOVS, Deceased, Plaintiff-Appellant,

v.

STATE OF MISSISSIPPI, et al., Defendants-Appellees.

No. 80–3222.

United States Court of Appeals, Fifth Circuit.*

Unit A

Dec. 11, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Shanahan, Jr., Asst. Atty. Gen., Henry Wingate, Sp. Asst. Atty. Gen., G. Edward Pickle, Jackson, Miss., for defendants-appellees.

Before INGRAHAM, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Janet Karpovs, individually and in a representative capacity, filed suit for damages resulting from the wrongful death of her husband in a drawbridge mishap. The district court granted summary judgment dismissing the demands against one defendant and dismissed the demands against all other defendants for lack of subject matter or personal jurisdiction. We affirm in part and reverse and remand in part.

### Facts

Janet Karpovs and her husband Juris A. Karpovs, both citizens of Louisiana, were traveling west on U.S. Highway 90 in Jackson County, Mississippi. When they reached the East Pascagoula River, a navigable waterway, the drawbridge traversing the river was in the process of being opened to allow passage of the commercial fishing vessels, THE MISSISSIPPI SOUND, GUSSIE J. FLYNN, and GRAND BUTTERE. The Karpovs' Volkswagen passed under the warning barrier and onto the movable section of the bridge. As the bridge completed the opening process, the vehicle slid into the drawbridge works where it was crushed. Juris Karpovs was killed.

Mrs. Karpovs filed suit against the State of Mississippi, the Mississippi State Highway Commission (MSHC), several officials and employees of the MSHC in their official and individual capacities,[1] Zapata Haynie Corporation, the Virginia corporate owner

Wm. Roberts Wilson, Jr., Pascagoula, Miss., for plaintiff-appellant.

Upshaw, Schissel, Dorizas & Ladner, Heber Ladner, Jr., Jackson, Miss., Bryan, Nelson, Allen, Schroeder & Backstram, Vincent J. Castigliola, Jr., Pascagoula, Miss., Frank

---

1. The complaint named: W. H. Pyron, Highway Commissioner, Southern District; John R. Tabb, Director; James Quin, Chief Engineer; Dan Hillman, District Maintenance Engineer; Donald C. Long, Safety Engineer; and Ben Larson, Bridge Tender.

of the three fishing vessels,[2] and several other defendants.[3] Jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332, and admiralty.[4] The claims against all defendants are grounded in common-law negligence; the claims against Zapata Haynie Corporation also include the maritime claims of unseaworthiness and failure to maintain a proper lookout.

The State of Mississippi, MSHC, and the individual public official/employee defendants moved for dismissal for want of subject matter jurisdiction, asserting the protections of the eleventh amendment and the doctrine of sovereign immunity. Zapata Haynie Corporation moved to dismiss for failure to state a claim and, alternatively, sought summary judgment. The court concluded that the claims against Mississippi, MSHC, and its members were precluded by the eleventh amendment, were barred by sovereign immunity, and could not properly be brought under admiralty jurisdiction. The trial court found that Zapata Haynie's vessels were not causally involved in Karpovs' death.

### 1. Eleventh amendment

The eleventh amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

This amendment is a restriction on federal judicial power, markedly limiting claims by private persons against a state. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Although the applicability of the amendment is often difficult to determine, four principles are well-established. First, while not specifically prohibited by the language, the immunity of an unconsenting state applies to suits brought by her own citizens as well as citizens of another state. *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Second, as a general matter suits against the state for prospective injunctive relief are permitted in limited circumstances, *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908),[5] but suits against the state treasury are absolutely barred. *Edelman v. Jordan*. Third, the immunity extends beyond the state and encompasses state agencies, officials and employees "when the action is in essence one for the recovery of money from the state ...." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). In such cases, "the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.; Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946). Fourth, the eleventh amendment applies unless a federally created right is at issue,

---

**2.** The fishing vessels were named as defendants, an apparent attempt at an in rem admiralty action. The vessels were not attached, nor was service of process ever obtained against them. Consequently, we agree with the trial court that the suit is one in personam against Zapata Haynie Corporation.

**3.** Appellant dismissed her appeal against Jackson County, Mississippi and its Board of Supervisors, both personally and in their official capacities, and appellant does not appeal the dismissal of defendants Hazelet and Erdal, and Texas Construction Company. The trial court first dismissed the claims against these defendants with prejudice, subsequently modifying the judgment pursuant to Fed.R.Civ.P. 60(b) to provide that the dismissal is without prejudice.

This modification was effective notwithstanding the fact that the appeal had already been noticed. *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697 (5th Cir. 1955).

**4.** Admiralty jurisdiction is invoked under 28 U.S.C. § 1333, general admiralty jurisdiction, and 46 U.S.C. § 740, the Admiralty Jurisdiction Extension Act.

**5.** *See, e. g., Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). An in-depth discussion of the propriety of injunctive relief is not necessary; the matter before us involves only monetary damages.

or a state has either consented to suit in federal court or has waived its eleventh amendment shield. *Parden v. Terminal Railroad Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). The instant inquiry presents questions concerning application of the third and fourth principles—may the state-related parties assert the immunity and has Congress abrogated the immunity under the circumstances presented in this case? We consider these in reverse order.

### A. *Abrogation*

█ Appellant maintains that the State of Mississippi is not entitled to invoke eleventh amendment immunity. Appellant cites *Chesapeake Bay Bridge and Tunnel Authority v. Lauritzen*, 404 F.2d 1001 (4th Cir. 1968), apparently reasoning that Congress has abrogated Mississippi's immunity through enactment of the Bridge Act of 1906, 33 U.S.C. §§ 491 *et seq.*, and the Rivers and Harbors Appropriations Act, 33 U.S.C. §§ 401 *et seq.* This contention is contrary to established law in this circuit. In *Intracoastal Transport, Inc. v. Decatur County*, 482 F.2d 361 (5th Cir. 1973), we held that the state of Georgia did not subject itself to a suit for damages for alleged negligent operation of a drawbridge when it entered a federally regulated activity by building a bridge over navigable waters. After reviewing the authorities, including *Parden v. Terminal Railway Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), we stated:

> It is no longer sufficient merely to show that a state has entered a federally regulated sphere of activity and that a private cause of action is created for violating the applicable federal provision, but in addition the private litigant must show that Congress expressly provided that the private remedy is applicable to the States.

482 F.2d at 365. We found no express private remedy provided in either the Bridge Act or the Rivers and Harbors Act. In so ruling we expressly declined to follow the Fourth Circuit's decision in *Lauritzen*, which reached the opposite result.

In *Freimanis v. Sea-Land Service, Inc.*, 654 F.2d 1155 (5th Cir. 1981), we reaffirmed our *Intracoastal* holding against a challenge that recent developments had eroded its foundations, stating:

> Contrary to appellant's arguments, we find that the foundations of *Intracoastal* are still solid. If anything, the authorities in favor of what has come to be called the "clear statement" approach with regard to eleventh amendment immunity have grown more numerous since our 1973 decision in *Intracoastal*.

654 F.2d at 1158 (footnote omitted). We therefore reject appellant's argument that Mississippi is not entitled to invoke the eleventh amendment.

### B. *Eleventh Amendment Beneficiaries*

█ The suit for damages against the State of Mississippi is clearly barred. Any judgment against MSHC, a state agency, would be paid by funds from the state treasury; accordingly, the demands against MSHC are barred. *Dagnall v. Gegenheimer*, 645 F.2d 2 (5th Cir. 1981). *Accord, Freimanis v. Sea-Land Service, Inc.* The remaining question is whether the individual defendants may raise this shield.

█ State officials come within the protective ambit of the eleventh amendment when judgments rendered against them are to be paid with state funds. Speaking to this question in *Edelman v. Jordan*, 415 U.S. at 663, 94 S.Ct. at 1356, the Supreme Court stated: "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." The determination whether the judgment will be paid by the individual defendants or by the state is often difficult to make. When the distinction is unclear, the essential nature and effect of the proceeding must be examined. *Ex Parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

The decision in *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), is instructive. In that case, the Ford Motor Company sued

the Department of Treasury of the State of Indiana, and the individual members of the Board of the Department, to recover taxes wrongfully collected by the state. The Supreme Court stated:

> Where relief is sought under general law from wrongful acts of state officials, the sovereign's immunity under the Eleventh Amendment does not extend to wrongful individual action, and the citizen is allowed a remedy against the wrongdoer personally. Where, however, an action is authorized by statute against a state officer in his official capacity and constituting an action against the state, the Eleventh Amendment operates to bar suit except in so far as the statute waives state immunity from suit. ·

*Id.* at 462, 65 S.Ct. at 350 (citations omitted). In concluding that the suit was against the state, and not the individuals, the Court relied on an Indiana statute which prescribed a detailed procedure for obtaining refunds of taxes illegally exacted, including the provisos that the taxpayer could bring an "action" against the department and any judgment rendered was to be paid out of "any funds in the state treasury." *Id.* at 463, 65 S.Ct. at 350.

In the case before us there is no Mississippi statute specifically authorizing a person injured on Mississippi highways to sue the individual officers of the MSHC, and there is no statute prescribing that payment of any judgment rendered in such a suit is to be with state funds.[6] There is nothing inherent in the instant suit which suggests that a judgment against the bridge tender, for example, would not be paid by him. It is not enough merely to say that the sums involved exceed his financial capability. The Karpovs' claims include demands against these parties in their private capacities and, therefore, the trial judge erred in finding that the officers and employees of the MSHC could invoke the absolute protection of the eleventh amendment. This conclusion leads to a consideration of Mississippi's doctrine of sovereign immunity.

### 2. Sovereign immunity

Sovereign immunity antedates eleventh amendment immunity and is a separate and distinct concept. A finding respecting either the waiver or the applicability of one does not necessarily mandate the same result as to the other. As the Supreme Court observed in *Petty v. Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 276, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959): "Nor will a waiver of immunity from suit in state courts do service for a waiver of immunity where the litigation is brought in the federal court."

■ In Mississippi, the traditional sovereign immunity remains intact unless removed by statute. *Mississippi Centennial Exposition Co. v. Luderbach*, 123 Miss. 828, 86 So. 517 (1920).[7] The Mississippi Supreme Court has consistently held that the right to sue the state or its agencies must be expressly granted by statute for the specific type of claim asserted, *"without which express grant no allowance to sue the state exists."* *Jagnandan v. Mississippi State University*, 373 So.2d 252, 254 (Miss.1979) (*citing State v. Woodruff*, 170 Miss. 744, 766, 150 So. 760, 762 (1933) (emphasis in original)).

MSHC is an agency of the state, *State Highway Comm'n v. Gulley*, 167 Miss. 631, 145 So. 351 (1933), and the Mississippi Legislature has provided in Miss.Code 65–1–19(c) the conditions under which it may sue

---

**6.** Mississippi Code § 65–1–19(c) allows the MSHC to sue and be sued, but that statute does not create a general liability in tort; suits may be maintained under that provision only on such grounds as are specifically authorized by statute. *State Highway Comm'n v. Knight,* 170 Miss. 60, 154 So. 263 (1934); *Stewart v. State Highway Comm'n,* 166 Miss. 43, 148 So. 218 (1933). This statute does not satisfy the requirements discussed in *Ford Motor Co.* for the determination that in authorizing suit against an individual the state intends to be the real party at interest.

**7.** "It is familiar learning that the state and its subdivisions and agencies are not subject to suit unless made so by statute; and the statute, when a statute exists, is the measure of the power to sue such board or agency." 86 So. at 519.

and be sued. Viewing this statute, the Mississippi Supreme Court declared in *Stewart v. State Highway Comm'n*, 166 Miss. 43, 148 So. 218, 219 (1933):

> In the case of *State Highway Commission v. Gulley* (Miss.) [167 Miss. 631] 145 So. 351, in construing this section [Chapter 122, Section 5006(c) of the Miss.Code of 1930, predecessor to Miss.Code 65–1–19(c)], it was held that a general statutory grant of authority to sue a governmental subdivision or agency does not create any liability, and suit may be maintained thereunder only for such liability as is authorized by statute; and that the provision ... that the state highway commission, an agency of the state, may sue and be sued, does not create any liability or authorize suit against it for any liability not authorized by statute, either expressly or by necessary implication.

We are cited to no statute, and independent research reveals no authority that imposes liability on the MSHC or on the individual employees of the MSHC under the circumstances presented in this case.

Appellant advances three arguments inviting us to impose liability on the MSHC and/or its individual employees. Appellant first urges us to abrogate the sovereign immunity doctrine. Appellant points out that the Mississippi Supreme Court has criticized the doctrine and may be prepared to abolish it. We agree that the doctrine has been the subject of criticism but we are unpersuaded that the Mississippi Supreme Court is prepared to judicially abrogate it. In *Jones v. Knight*, 373 So.2d 254, 257 (Miss. 1979), the state supreme court remarked:

> Abrogation of sovereign immunity strongly appeals to the sentiment of us all, but, if it were done as sought by the appellant, it would leave every state agency, institution, or branch of government vulnerable to tort suits. We think abrogation, if ever accomplished, should be accomplished by legislation [setting forth, e. g., limits of claims and method of payment] ....

(*Citing Berry v. Hinds County*, 344 So.2d 146 (Miss.1977)). We will not do that which the state legislature and state supreme court have declined to do.

■ Appellant next argues that the state has waived the applicability of the doctrine of sovereign immunity as to the individual defendants by the purchase of fidelity bonds. We fail to find this argument persuasive. Fidelity bonds are not general liability insurance bonds, *see Poole v. Brunt*, 338 So.2d 991 (Miss.1976),[8] and in any event, would not cover the actions of the officials in the case at bar.[9] Even if the bonds could be considered as general liability bonds, the majority of jurisdictions have held that procurement of insurance by a governmental unit to protect it from tort liability does not effect a waiver of immunity. *See, e. g., McKenzie v. City of Florence*, 234 S.C. 428, 108 S.E.2d 825 (1959); Annot., *Municipal Immunity Insurance*, 68 A.L.R. 1438. In addition, we recently held in *Reeves v. City of Jackson*, 608 F.2d 644 (5th Cir. 1979), that under Mississippi law, a state municipality did not waive its immunity by purchasing liability insurance.[10]

---

**8.** In *Poole*, the Mississippi Supreme Court stated:

> Our decision in holding that the surety bond is not an automobile liability policy seems to be in accord with the great weight of authority in the country.

> To read into the bond liability for the operation of an automobile enlarges the liability [of the policy] to an extent not heretofore recognized and without any words in the bond itself providing for such liability.

338 So.2d at 995.

**9.** The form of the bond for such individual is prescribed by statute "for the faithful perform-

ance of the duties of his office" or "the faithful discharge and performance of his duties." Miss.Code §§ 65–1–3 (commissioner); 65–1–9 (director); 65–1–11 (chief engineer and other employees). On their face they do not appear to be general liability bonds.

**10.** In *Reeves* we stated:

> Reeves argues that Miss.Code Ann. § 21–21–11 (1972) constitutes a waiver of statutory immunity that opens the City to suit. He misreads this provision. Section 21–21–11, which was adopted in 1971, 1971 Miss.Laws ch. 376, § 1, authorizes a city to purchase insurance to protect its policemen from suits arising out of their official duties; it does *not*

We, therefore, find no waiver in the present case.

We now turn to appellant's third, and much more telling argument, that sovereign immunity does not apply to the claims against the employees of the MSHC, since those claims are imposed against the employees in their individual capacities. In Mississippi, a public official sued in his individual capacity for acts arising out of his employment is afforded the protection of sovereign immunity but this protection is limited. *Davis v. Little*, 362 So.2d 642 (Miss.1978). The immunity is limited because its purpose is to protect the sovereign collaterally, by protecting the public official in his decision-making process. *Id.* at 643–44. Thus a distinction has arisen: the partial immunity afforded a public official only extends to discretionary acts; a public official remains liable in his individual capacity for ministerial acts. The Mississippi Supreme Court articulated this distinction in *State For Use of Russel v. McRae*, 169 Miss. 169, 152 So. 826 (1934), a tort suit against a member of a board of supervisors. In holding that sovereign immunity did not bar the suit, the court stated:

> This is not a suit against the sovereign or against the board or a member thereof as a branch of state sovereignty, but is one against a member of the board for an alleged tort committed in the performance of a purely ministerial act.

169 Miss. at 179, 152 So. at 828.

A similar result was recently reached by the court in *Davis v. Little*, 362 So.2d 642 (Miss.1978). In *Davis*, a county employee, while driving a county vehicle on official business, struck and injured a pedestrian. The complaint alleged negligence and made Little a party-defendant, individually. Little raised the defense of sovereign immunity, claiming that she was a member of the Simpson County Board of Supervisors. In reversing the trial court's decision that sovereign immunity barred the suit, the court held:

> authorize a city to purchase insurance to protect *itself* from vicarious liability for the torts of its officers. Even if it did so, such a

Since the act with which Little was charged did not involve a discretionary decision-making process and was not an act of the Board as a whole, the defense of immunity will not lie.

*Id.* at 645.

In the present case, the complaint indicated, both in the caption and body of the pleading, that the suit was against the employees of the MSHC in their official and individual capacities. The complaint also contained allegations that the named employees of the MSHC committed specific individual acts of negligence. For example, the complaint alleged that Ben Larson, the bridge tender, failed to keep a proper lookout when raising the drawbridge. There are similar allegations pertaining to the other individual defendants.

In finding that sovereign immunity barred the Karpovs' claims, the trial judge concluded:

> The State of Mississippi retains sovereign immunity with regard to tort claims of this nature against it and/or its agencies. It also retains governmental immunity with regard to tort claims against officials and/or employees acting within the course and scope of their employment and in their official capacity. For these reasons this action is further barred as to those defendants set forth in paragraph 1 [the individual MSHC defendants] of the Findings of Fact herein.

We are unable to ascertain whether the trial judge was ruling on the claims against the employees of MSHC in their official capacity or as individuals. In addition, the judge does not address the issue of whether the actions complained of were ministerial or discretionary. This distinction is often difficult to draw, particularly at the pleading stage of the litigation. When confronted with a similar situation in *Jones v. Knight*, 373 So.2d 254 (1979), the Mississippi Supreme Court reversed a trial

> provision alone would not suffice to abrogate municipal immunity.
> 608 F.2d at 654 n.6.

court's grant of a demurrer based on sovereign immunity, stating:

The posture of the defendant-appellee, Kevin Knight, the individual defendant whom appellant Jones charged with assaulting and battering him, differs from the other defendants' posture. Scrutiny of the declaration, insofar as defendant-appellee Kevin Knight is concerned, leads us to conclude that from the declaration it cannot be said with confidence that any immunity doctrine extends to him. Accordingly, appellant Jones should be given an opportunity to put on proof concerning the actions of the appellee, Ranger Knight, on the occasion in question. Then, upon the proof, the lower court should decide whether or not Knight is shielded by the public officials doctrine, or whether a case is made out sufficient to go to the jury on the alleged liability of Kevin Knight individually.

We cannot definitively decide this issue on the basis of the record presented on appeal. We, therefore, reverse and remand for a determination of whether the doctrine of sovereign immunity shields the employees of the MSHC in their individual capacities.

3. *Claim against Zapata Haynie Corporation*

The trial court granted the motion for summary judgment filed by Zapata Haynie Corporation, finding that its vessels were not involved in the accident in such a manner as to impose liability.

■ We first dispose of appellant's assertion that she has stated a claim in admiralty. Maritime jurisdiction does not extend to torts occurring on piers, bridges, jetties, or even ramps or railways running into the sea. *Rodrigue v. Aetna Casualty Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Any suggested inroads on this long-standing rule ended in 1972, when the Supreme Court held that in addition to a maritime locality, admiralty jurisdiction will not lie unless there is a significant relationship between the tort claim and traditional maritime activity. *Executive Jet*

*Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Richardson v. Foremost Insurance Co.*, 641 F.2d 314 (5th Cir. 1981).

In *Adams v. Harris County*, 452 F.2d 994 (5th Cir. 1971), *cert. denied*, 406 U.S. 968, 92 S.Ct. 2414, 32 L.Ed.2d 667 (1972), we were confronted with a situation legally indistinguishable from the instant case. In *Adams*, a motorcyclist was injured when he struck the warning barricade of a drawbridge that was in the process of being raised to allow passage of a pleasure boat. We found no admiralty jurisdiction.

■ Appellant also argues that admiralty jurisdiction is proper under the Admiralty Extension Act of 1948, 46 U.S.C. § 740, which provides:

The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damages or injury, to persons or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

The operative language is "caused by a vessel." Appellant contends that her husband's injuries were "caused" by appellee's vessels because the bridge was opened to allow passage of the vessels. In *Adams* we held that the mere fact that a bridge opens to allow passage of a vessel is not sufficient to impute causation to the vessel.

The inescapable conclusion is that the dropping of the barricade was solely the act of the bridge keeper and no act of the vessel proximately caused his negligence, if there was any.

452 F.2d at 996–97. The Admiralty Extension Act, then, affords no assistance to appellant.

■ Although the court lacked admiralty jurisdiction it could exercise diversity jurisdiction over the case and apply common law negligence principles. Appellant is a citizen of Louisiana and Zapata Haynie Corporation is deemed to be a citizen of Virginia. Since diversity jurisdiction requires the application of state law, the question for decision is whether appellee

can be held accountable for negligence under Mississippi law. We conclude that it cannot.

We are aware of no case in which the Mississippi courts have addressed the question of the liability of a vessel owner for injuries to a motorist on a drawbridge. We are convinced, however, by the decisions of the Mississippi Supreme Court in other negligence cases, that Zapata Haynie Corporation is not liable under Mississippi law.

Under Mississippi law, for actionable negligence to exist, the defendant must owe the plaintiff a legal duty. *J. C. Penney Co. v. Sumrall*, 318 So.2d 829 (Miss.1975); *Stanley v. Morgan & Lindsey, Inc.*, 203 So.2d 473 (Miss.1967). We noted Mississippi's adoption of this universal principle in *Ward v. Hobart Mfg. Co.*, 450 F.2d 1176 (5th Cir. 1971).

A duty does not exist, "[i]f the defendant could not reasonably foresee any injury as the result of his acts, or if his conduct was reasonable in the light of what he could anticipate . . . ." *Reaves v. Wiggs*, 192 So.2d 401, 403 (Miss.1966) (*citing* W. Prosser, Law of Torts § 50 (3d ed. 1964)). The rationale behind this foreseeability requirement is that no one is expected to guard against events which are not reasonably to be anticipated or that are so unlikely that the risk would be commonly disregarded.

In the case before us the vessels approached the drawbridge and requested passage. It fractures credulity to conclude that the captain and crew of the vessels reasonably could have foreseen and expected that if they signaled for passage a vehicle would pass under the warning barrier and be crushed in the drawbridge mechanism. We are not prepared to impose that kind of duty on vessels using navigable waters.[11] Vessels traditionally have had the right to pass a drawbridge unimpeded

and to assume the bridge will be properly opened. *Santa Rosa Island Auth. v. F. Rust Smith & Sons, Inc.*, 303 F.2d 576 (5th Cir. 1962). In that case we stated "the vessel has the right to rely upon the bridge operator carrying out his clear duty to go through with the opening of the bridge in a satisfactory manner." *Id.* at 580. We recently reaffirmed this principle in *Freimanis v. Sea-Land Services, Inc.* In considering the liability of a vessel for colliding with a drawbridge that was not fully opened, we therein stated:

> A vessel that has given a signal to the operator of a bridge to open the span can, in the absence of proper warning, prudently proceed and assume that the span will be timely opened for passage. The vessel is not bound to heave to until the bridge has been raised or to examine the situation critically before proceeding.

654 F.2d at 1162. We find that the vessels in the present case owed no duty to the appellant. There being no duty, there can be no negligence. Accordingly, we find that the trial court properly granted summary judgment in favor of Zapata Haynie Corporation.

The judgment of the district court insofar as it dismissed the claims against the public employees in their individual capacities is REVERSED and the matter is REMANDED; in all other respects, the judgment of the district court is AFFIRMED.

---

11. In *Adams v. Harris County*, although addressing the question of admiralty jurisdiction, we made the following observation:

   [The vessel] had no control, could exercise none, and attempted to exercise none over the manner in which the bridge keeper performed his duties . . . .
   452 F.2d at 996–97.