Gerald A. PADGETT, Larry Boykin, and Am–Can Trucking, Inc., a Mississippi corporation, Plaintiffs,

v.

U.L. PALMER, Sr., Calvin Allen, Individually and in His Official Capacity as a Deputy with the Greene County Sheriff's Department, and Roger Hillman, Individually and in His Official Capacity as a Deputy with the Greene County Sheriff's Department, Defendants.

No. 2:92–CV–173 PS.

United States District Court, S.D. Mississippi, Hattiesburg Division.

June 30, 1994.

1186

J. Andrew Phelps, J. Andrew Phelps, Atty., Robert Rogan Marshall, Robert Rogan Marshall, Atty., Hattiesburg, MS, for plaintiffs.

Stanford Young, Stanford Young, Atty., Waynesboro, MS, for U.L. Palmer, Sr.

S. Robert Hammond, Jr., Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Hattiesburg, MS, James O. Dukes, Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Gulfport, MS, for Calvin Allen, Roger Hillman.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on Motion for Summary Judgment filed on behalf of the Defendants Calvin Allen and Roger Hillman. The Court having reviewed the motion, the response, the briefs of counsel, the authorities cited and being otherwise fully advised in the premises finds that the motion is well taken and should be granted. The Court further finds as follows, to wit:

## FACTUAL BACKGROUND

This action arises out of a dispute over the purchase and transportation of watermelons. The individuals who played a part in the facts of this case are as follows: Gerald A. Padgett is the owner of the truck and trailer which he alleges was wrongfully detained by U.L. Palmer, Calvin Allen and Roger Hillman. Mr. Padgett is also the president of Am–Can

Trucking to which he had leased the truck and trailer in question. Larry Boykin is a watermelon broker who had hired Padgett to transport watermelons which he had purchased from U.L. Palmer. Bruce Redmon was an associate of Gerald Padgett who had been the middle man getting Larry Boykin and Padgett's company Am–Can together to transport Palmer's watermelons. Paul Taylor was the driver of Mr. Padgett's truck and Aaron Pope was a watermelon stacker who worked for Larry Boykin. U.L. Palmer was the owner of the watermelons in question. Ben Little was the owner of the property where the watermelons were grown which had been leased to Palmer. Roger Hillman and Calvin Allen are deputy sheriffs of the Greene County Sheriff's Department.

Sometime in the late afternoon or early evening hours of July 9, 1992, Deputy Calvin Allen received a call at his home from Ben Little who stated that there was trouble at U.L. Palmer's farm over some watermelons. Deputy Roger Hillman was called by the sheriff's dispatcher and was also told of the trouble. Apparently sometime earlier in the day on July 9, Padgett's truck had been dispatched to Palmer's farm for watermelons to be loaded thereon. The truck was accompanied by Paul Taylor, the driver, and Aaron Pope, the watermelon stacker. Sometime during the course of loading the watermelons a dispute arose as to how the Plaintiff's employees were culling Palmer's watermelons. It was out of this dispute that the call to the deputy sheriffs emanated.

When the deputy sheriffs arrived on the scene, the driver, Paul Taylor, and U.L. Palmer were squared off some three or four feet apart. One of the deputy sheriffs described the truck driver as a "big burly man" and U.L. Palmer as being "about an ax-handle wide across the shoulders." Both of the deputy sheriffs were concerned there was going to be violence. Palmer and Taylor were confronting each other approximately three to four feet apart in loud voices and, as Deputy Hillman described them, were "bowed up" ready to fight. Palmer had a vehicle parked across the road and was blocking the removal of Padgett's truck and trailer.

Before the deputy sheriffs arrived, Palmer had talked to Bruce Redmon as representative for the Plaintiffs and apparently worked out an agreement whereby the trailer would remain on his property until the next day until the dispute could be resolved. Palmer had agreed to allow Taylor to remove the tractor truck. When the deputy sheriffs arrived, Palmer had apparently changed his mind and decided to keep the truck and trailer. However, after the deputies calmed the situation down, Taylor was allowed to leave with the tractor truck.

The next morning, July 10, 1992, Bruce Redmon called the Greene County Sheriff's Department and told Deputy Allen that he wanted to go back to Palmer's property to see if Palmer would allow him to have the trailer. Allen went to Palmer's property with Redmon, Taylor and Pope. Deputy Allen spoke with Palmer who informed the deputy that he had decided to keep the tractor truck as well as the trailer after consulting with his attorney. Deputy Allen informed Redmon of this and then provided transportation to Redmon, Taylor and Pope from Palmer's property.

At some point, Redmon contacted the Greene County District Attorney's office and the Attorney General for the State of Mississippi's office regarding this situation. He was advised by both entities that he would have to secure a court order for the removal of the truck and trailer from Palmer's property. However, no other attempt was made to remove the truck and trailer from Palmer's property until Monday, July 13, 1992. After phone conversations between Padgett and Palmer, Palmer had decided to allow the removal of the truck and trailer by the Plaintiffs. Subsequent thereto Palmer filed a suit in state court against the Plaintiffs apparently for breach of their watermelon contract. Thereafter the Plaintiffs filed the instant action in this Court alleging various constitutional violations, abuse of process, conversion and intentional and/or negligent interference with business claims against Palmer and the two deputy sheriffs. This opinion addresses the liability of the two deputy sheriffs to the Plaintiffs on all claims Plaintiffs have made

against them and the federal claims asserted against Palmer.

## STANDARD OF REVIEW

The law of this jurisdiction concerning Summary Judgment is well-established. Fed.R.Civ.P. 56(c) provides, in pertinent part, that Summary Judgment,

> "... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to Judgment as a matter of the law."

In deciding the Motion, the trial Court should view all of the evidence in the light most favorable to the non-moving party. *Little v. Liquid Air Corporation*, 939 F.2d 1293, 1298 (5th Cir.1991). If, when the evidence is viewed in this light, it is apparent that the moving party is entitled to Judgment as a matter of law, the Motion should be granted. *Baton Rouge Bldg. & Construction Trades Council AFL–CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir.1986).

Once the moving party has shown affirmatively that the pleadings and discovery already in the record do not demonstrate enough for the Plaintiff to prevail, the burden shifts to the non-moving party to come forward with specific and material facts admissible in evidence to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party cannot simply remain silent and prevail. In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 at 119 (5th Cir.1982).

The mere existence of a factual dispute will not bar Summary Judgment unless the disputed fact is outcome-determinative under the governing law. Factual disputes that are irrelevant or unnecessary are to be ignored. *Anderson v. Liberty, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## SECTION 1983 LIABILITY

■ The Plaintiffs must establish, as a prerequisite to maintaining a Section 1983 claim, the following: (a) that the Defendants were acting under color of state law, and (b) that while acting under color or state law, the Defendants violated rights of the Plaintiffs that are protected by the United States Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir.1984).

Plaintiffs have filed this action against Defendants Allen and Hillman in their "official capacity" as well as individually, thus this action is, in essence, against Greene County of which Allen and Hillman are employees. *See Monell v. Dept. of Social Services*, 436 U.S. 658, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980); and *Palmer v. San Antonio*, 810 F.2d 514 (5th Cir.1987).

## SECTION 1983 AND MUNICIPAL LIABILITY (OR COUNTY LIABILITY)

The Fifth Circuit discussed the standard to govern the imposition of municipal liability [1] in Section 1983 actions in *Webster v. Houston*, 735 F.2d 838, 841 (5th Cir.1984):

> A municipality is liable under Section 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. Official policy is:

---

1. A county is treated like a municipality under § 1983 jurisprudence for imposition of liability. They are both deemed "persons" to the extent that such does not conflict with the Tenth Amendment.

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or

2. A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority. Actions of officers or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

■ "The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority." *Bennett v. Slidell,* 728 F.2d 762, 769 (5th Cir.1984). "Policymakers act in the place of the governing body in the area of their responsibilities; they are not supervised except as to the totality of their performance." *Id.* at 769. The constitutional deprivation must result from the implementation or execution of a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers. This includes customs and usages which have become so persistent and widespread as to be permanent and well settled so as to constitute a custom or usage with a force of law. *See Monell, supra.* Of course, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035.

■ The question that confronts this Court is what, if any, official custom or policy of the County Defendants caused the Plaintiffs to be subjected to a deprivation of constitutional rights. The Plaintiffs make no allegations in this regard. They merely assert that the deputies had a duty to force Palmer to return the truck and trailer to them. What the plaintiffs assert is untenable. Placing the burden of deciding the legal decision as to who is entitled to disputed property on the deputy sheriffs who were dispatched to keep the peace in a potentially violent confrontation is absurd. Plaintiffs have offered no proof of a custom or policy of Greene County, Mississippi which has caused the complained of injuries. Further, the Court would note that it was the plaintiffs who first agreed to leave the tractor truck on the first night of the encounter and it was the plaintiffs who requested Deputy Allen accompany them to Palmer's the next day. Plaintiffs' Constitutional claims are totally without merit.

## QUALIFIED IMMUNITY

■ Immunity is extended, under Mississippi law, to public officials acting in their official capacity except on those occasions where they are performing merely ministerial duties. *Davis v. Little,* 362 So.2d 642 (Miss.1978). In *Davis,* the Court held that:

> The immunity of the public official is limited, not an absolute immunity. Since the purpose of the immunity is to protect the official in his decision making role, we have held that the immunity will not apply unless the action involves a discretionary decision-making process. Phrased otherwise, if the action is merely ministerial, there is no immunity.

*Id.* at 644.

In *Poyner v. Gilmore,* 171 Miss. 859, 158 So. 922 (1935), the means of distinguishing between the two official capacities was as follows:

> While no inflexible rule can be laid down for determining in every case whether or not an act of a public officer is ministerial or judicial, '[t]he most important criterion perhaps, is that (if) the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion,' the act in discharge thereof is ministerial.

*Id.* 158 So. at 923.

The Fifth Circuit, in *Karpovs v. State of Mississippi,* 663 F.2d 640 (5th Cir.1981), ad-

dressed the applicability of qualified immunity to employees acting in the scope and course of their employment. In *Karpovs*, the Court stated that Mississippi extends the qualified immunity granted to public officers to employees acting in the course and scope of their employment. *Karpovs*, 663 F.2d at 647.

■ After a review of the facts of this case, the Court finds that the actions of Deputies Hillman and Allen on July 9 and 10, 1992, involved a discretionary decision-making process entitling them each to qualified immunity.

### PLAINTIFFS' OTHER CLAIMS

■ Plaintiffs have filed other claims against these defendants alleging abuse of process, conversion and intentional and/or negligent interference with business. As to the abuse of process claim, no legal process was issued as a result of the complained of incident and certainly not by these two defendants. Without the issuance of legal process, there can be no abuse thereof. *See State, Use and Benefit of Foster v. Turner*, 319 So.2d 233 (Miss.1975).

■ Regarding plaintiffs' claims of conversion against these two defendants, not one iota of proof has been brought forward that either Hillman or Allen exercised any dominion or control over goods inconsistent with the owner's rights, which must be proved to make out a claim for conversion. *See Walker v. Brown*, 501 So.2d 358 (Miss.1987). Plaintiffs' mere allegations that the deputies had a duty to order the return of the truck and trailer are totally without support in the law. Plaintiffs' baseless arguments to the contrary notwithstanding. There is no dispute over any genuine issue of material fact on this claim.

On plaintiffs' remaining claim of intentional and/or negligent interference with business, no proof has been offered to show that these defendants committed any negligent, intentional or willful act which was calculated to cause damage to plaintiffs in their lawful business. *See Irby v. Citizens National Bank of Meridian*, 239 Miss. 64, 121 So.2d 118 (1960).

There are no genuine issues of material fact in dispute regarding the claims brought against these two defendants by these plaintiffs. Summary Judgment in favor of Defendants Hillman and Allen on all of Plaintiffs' claims is thus appropriate, and it is so Ordered.

### REMAINING CLAIMS AGAINST PALMER

The only claims remaining are those against Palmer which include the state law claims for abuse of process, conversion and intentional and/or negligent interference with business and the allegation of a conspiracy under § 1983 between Palmer and the deputies to violate certain enumerated constitutional rights. Even though Palmer has not moved for summary judgment, the Court, for reasons of judicial economy and in the interests of justice, will address and dispose of Plaintiffs' claims against Palmer since all necessary discovery to deal with the claims has been completed and is before the Court and the matter is ripe for decision.

### § 1983 AND PRIVATE PARTIES

■ As stated previously, the Plaintiffs must establish, as a prerequisite to maintaining a Section 1983 claim, the following: (a) that the Defendants were acting under color of state law; and, (b) that while acting under color or state law, the Defendants violated rights of the Plaintiffs that are protected by the United States Constitution or laws of the United States. *Parratt v. Taylor, supra;* and *Augustine v. Doe, supra.* To "act under color of state law" requires "state action." *Frazier v. Board of Trustees of Northwest Miss.*, 765 F.2d 1278 (5th Cir.1985). However, the dismissal of the deputies from this action does not require the dismissal of private parties alleged to have conspired with them, *see Smith v. Winter*, 782 F.2d 508 (5th Cir.1986), but in order to make out a claim against Palmer under § 1983, Plaintiffs must prove that their alleged constitutional loss "stemmed from conduct properly or fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). "Under the fair attribution test, 'a State normally can be held responsible for a private

decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Frazier,* 765 F.2d at 1284; *quoting Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). Further, in order for the Plaintiffs to establish a conspiracy involving state action and action under color of state law, they must prove that Palmer "willfully participated in a joint action with a state official." *Daniel v. Ferguson,* 839 F.2d 1124, 1131 (5th Cir.1988). "A private party does not act under color of state law when [he] merely elicits but does not join in an exercise of official state authority." *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 388 (5th Cir. 1985).

Viewing the evidence most favorably toward Plaintiffs, they have totally failed to offer any proof of this. Indeed, neither of the deputies knew Palmer nor did Palmer know them prior to the night of the incident in question. The deputies were interjected into a contractual dispute between hostile parties. They were attempting to keep the peace. Palmer was vehemently protesting what he saw as a violation of his contractual rights. There is absolutely no proof of a concerted, willful action by the deputies and Palmer or any other state actor to violate Plaintiffs' constitutional rights. There is simply no evidence of a conspiracy between Palmer and any state actor or any coercive use of State power toward Palmer which could be fairly attributable to the State. Therefore, the constitutional claims asserted by the Plaintiffs against Palmer must be, and are hereby, dismissed.

The only remaining claims are the State law claims against Palmer over which this Court may only exercise pendent jurisdiction. "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966). The exercise of pendent jurisdiction should be viewed consistent with considerations of judicial economy, convenience and fairness to the litigants. *See Laird v. Bd. of Trustees of Inst. of Higher Learning,* 721 F.2d 529 (5th Cir.1983). However, where the "federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Gibbs* 383 U.S. at 726, 86 S.Ct. at 1139. Not only have all federal claims asserted in this action been dismissed, but there is a parallel state court action among the remaining parties regarding the facts of this case.

The Court finds that the interests of justice require that it decline to exercise its pendent jurisdiction over the remaining state law claims, and that the remainder of this matter should be dismissed in its entirety, without prejudice, and It Is So Ordered. Of course, this in no way is meant to impugn the merits of plaintiffs' State law claims against Palmer, which this Court has declined to entertain.

A separate judgment in accordance with Rule 58, Federal Rules of Civil Procedure will be entered herein.

SO ORDERED AND ADJUDGED.